C. BENDER & SON V. JOHN B. PEYTON.

No. 257.

**1. Contract, Violation of.**—Appellee contracted to furnish money, feed. and merchandise to appellants, who were to ship to him all lumber manufactured by them at their mill, and appellee was to exert himself to make sales of said lumber. obtain the best possible price, etc. Thereafter, appellee bought one-third interest in another lumber mill, and entered into partnership with the other owner, and agreed to give said partnership business his attention and general control and supervision, and to sell lumber. pay bills, etc. This subsequent contract of partnership was not a violation of his contract with appellants. Neither the contract with appellants nor the contract of partnership called for the entire service of appellee.

**2. Briefs—Propositions in, not Included in Assignment.**—A proposition not included in an assignment of error will not be considered. See example.

**3. Usage—Evidence of, when Admissible.**—Evidence of usage is not admissible to vary the terms of a contract, but may be received in explanation thereof. Parties to a contract are bound as they bind themselves, but they contract with reference to the usages of the particular trade or business about which their agreement is made; and evidence to show what amount of different classes of lumber should be carried in stock by a saw mill to enable it to fill the usual run of orders, was pertinent to the issue as to whether or not the plaintiff was in default in failing to sell "all" of defendant's lumber, and was admissible.

**4. Incomplete Account Stated, when Evidence.**—Plaintiff and defendants had an accounting together, in an attempt to make a settlement, and they checked and agreed to all differences except commissions on sales made by defendants and commissions on lumber on hand, and defendants ordered the statement copied in their letter book. It was not admitted by the court below

.as an account stated, but as bearing on the question of general indebtedness, and the jury was so informed. *Held*, no error.

**5. Charge — Construction of Contract.** — A charge which directs the .jury to read the written contracts, and from their terms to arrive at the intention of the parties, when taken in connection with other portions of the charge, *held*, not to submit the construction of the contracts to the jury. [The charge ·clearly defined all the issues involved, and gave fully the rules by which the jury were to be governed in their findings, whether in favor of the plaintiff or defendants. Reporter.]

**6. Charge — Harmless Error.** — Though the charge stated the amount claimed in the petition at a greater sum than was admitted to be due, as the verdict of the jury was evidently not affected by it, nor the question properly raised by an assignment of error, it was not reversible error.

**7. Argument of Counsel.**—Counsel for plaintiff, in addressing the jury, stated, that Clayton told Mrs. McDuffie, at the time the contract of partnership was made, "that he could only give half his time to the McDuffie mill." This had been excluded by the court as evidence; but there was no notice taken of the statement at the time it was made in argument, and it does not show ground for reversal.

Appeal from Polk.    Tried below before Hon. L. B. Hightower.

*James E. Hill*, for appellants.—1. The evidence in this case shows that ·defendants did not violate either the contract of 1887 or the contract of 1888, and that plaintiff did violate the said contract of January 14, 1888, .and by a subsequent contract made by him with Eliza A. McDuffie, did put himself in a condition directly antagonistic to defendants' interest, and did thereby forfeit and violate the said contract of 1888.

There is not an ambiguous word or phrase or sentence in the entire contract of 1888.    Courts enforce contracts as they find them. Where there is no doubt or ambiguity, there is no construction or interpretation.    It is not allowable to interpret what has no need of interpretation.    When .a deed is worded in clear and precise terms, when its meaning is evident, and leads to no absurd conclusion, there can be no reason for refusing to .admit the meaning which such deed naturally presents.    To go elsewhere in search of conjectures, in order to restrict or extend it, is but an attempt to elude it.    Menard v. Sydnor, 29 Texas, 259; Watrous v. McKie, 54 Texas, 71; Self v. King, 28 Texas, 552; Ingle v. Jones, 69 U. S., 1; 1 Greenl. on Ev., sec. 277; Garrett v. Trabue, 3 So. Rep., 153; Railway v. Johnson, 75 Ala., 596; Baine v. Browne, 56 N. Y., 285; Place v. Greenman, 6 N. Y., 681; Everheart v. Searle, 71 Pa. St., 256.

2.    The contract provides for the employment of a clerk to take charge of the store and lumber shipping, "who is to represent the interest of both parties to this contract;" and should he fail to represent the interest of both parties, then either party becoming dissatisfied with him may have him discharged, and another clerk is then to be employed to take charge of said business.    N. B. McClenny, under this contract, having

been selected by both parties as the clerk provided for, and he having ·charge of the shipping department, appellee, with power to remove him and have another employed that would execute the contract, having failed to discharge McClenny, the clerk selected by appellee himself, and employed to execute the contract at his suggestion, before he can complain now of a violated contract as to shipping of lumber, appellee must ·show that he employed the means provided by the contract as to himself for its execution, and that he discharged or demanded the discharge of the shipping clerk, and the employment of one that would " represent the interest of both parties." Field on Dam., sec. 126; Broom's Leg. Max., ·279; Sedg. on Dam., 6 ed., pp. 93, 94, 249, note 1.

3. The trial court erred in admitting as evidence the depositions of W. T. Carter and P. Josserand, and the verbal testimony of J. G. Martin, to prove a custom in the year 1888 in the lumber trade, as to the amount of lumber necessary to be carried in stock by a saw mill to fill orders; in ·admitting as evidence the deposition of W. T. Carter and P. Josserand, to prove the different classes of lumber required to be carried in stock by a saw mill in 1888, necessary to fill the usual run of orders; and to prove the amount of dry lumber they say is necessary to be carried in stock by a saw mill in 1888, to fill the usual run of orders, to prove a custom in the lumber trade and markets of 1888, in Arkansas, Louisiana, and Texas, when these issues were neither pleaded nor warranted by the contract in ·evidence. The written contract of 1888 between the parties is express, unambiguous, and certain; therefore evidence of custom or usage is not admissible to modify or explain it. Dewees v. Lockhart, 1 Texas, 537; Belcher v. Mulhall, 57 Texas, 20; Belcher v. Norsworthy, 16 S. W. Rep., 758; Railway v. Gilbert, 64 Texas, 541; Blum v. Bassett, 67 Texas, 197; Moran v. Prather, 90 U. S., 150; Creager v. Douglass, 77 Texas, 484; Barnard v. Kellogg, 77 U. S.. 383–395; Simmons v. Law, 3 Keyes, 219; Ingle v. Jones, 69 U. S., 1–10; The Reeside, 2 Sumn., 567; Railway v. Blackmar, 47 N. W. Rep., 173; Waterman v. Morrell, 9 Pac. Rep., 72; Wonderley v. Lumber Co., 23 N. W. Rep., 82, 83. The last three cases arose on lumber contracts.

To admit evidence of custom, the issue must be raised by pleading: Moore v. Kennedy, 81 Texas, 144; Belcher v. Mulhall, 57 Texas, 20; McGreal v. Wilson, 9 Texas, 426; Mims v. Mitchell, 1 Texas, 447.

4. The trial court erred in admitting as evidence the memoranda and writing offered by plaintiffs to prove an accounting and settlement by and between plaintiff and defendants on the 16th day of July, 1889. "An account stated is an account balanced and rendered, with an assent to the balance expressed or implied; so that the demand is essentially the same as if a promissory note had been given for the balance. To sustain an action upon an account stated, it must be shown that the defendant expressly or impliedly assented that he was indebted to the plaintiff in the

balance or sum claimed, and undertook by an express or implied promise that he would pay it." "There must be a mutual agreement between the parties as to the allowance and disallowance of the respective claims, and as to the balance as it is struck upon the final adjustment of the whole account and demands of both sides."· Appellants and appellee did not have such accounting and agreement. 8 Wait's Act. and Def., 36, 37; 1 Wait's Act. and Def., 187, 188.

5. The verdict of the jury is clearly wrong, and not supported by the evidence in this case, in this: The jury having been instructed to read the written contracts, and from their terms to arrive at the intention of the parties, it is quite clear that the jury gave the contracts a construction not warranted by the clear and unambiguous terms and words used in them, and did in fact construe the contracts as if ambiguous by the evidence of W. T. Carter, P. Josserand, and J. G. Martin, when by the words of the contracts they negative any such intention as being in the minds of the contracting parties. Sayles' Civ. Stats., art. 1317; Shepherd v. White, 11 Texas, 358; San Antonio v. Lewis, 9 Texas, 71; Arnold v. Dean, 61 Texas, 248; Ivey v. Williams, 78 Texas, 687; Cook v. Dennis, 61 Texas, 249; Railway v. Wynn, 14 S. W. Rep., 314; Wonderley v. Lumber Co., 23 N. W. Rep., 82, 83; Watermann v. Morrell, 9 Pac. Rep., 72, 73; Railway v. Blackmar, 47 N. W. Rep., 173.

*Holshousen & Feagin* and *J. R. Burnett,* for appellee.—Appellee's contract with Mrs. McDuffie did· not ipso facto "forfeit and violate" his contract with appellants. Whether the contract with appellants was or not violated, was a question of fact as to which the evidence was conflicting. Schaub v. Brewing Co., 80 Texas, 634; Dwyer v. Brenham, 70 Texas, 30; Meaher v. Lufkin, 21 Texas, 383; Laws. on Usages and Customs, 112, 367, 371; 6 Wait's Act. and Def., 636; Whart on Ev., sec. 961; Robinson v. United States, 13 Wall., 363; Walls v. Bailey, 49 N. Y., 464; 10 Am. Rep., 407.

GARRETT, CHIEF JUSTICE.—John B. Peyton brought this suit against C. Bender & Son, to recover certain advances and commissions alleged to be due him on two certain written contracts made by the parties, whereby plaintiff was to advance certain money and supplies to the defendants in the operation of their saw mill for the year 1887, at Curry, in Polk County, and for the year 1888 their saw mill at Holshousen, in said county, and to sell the product of said mills, for which he was to receive a commission of 10 per cent. Plaintiff set out said contracts, and an account of the alleged transactions between plaintiff and defendants, showing an alleged balance due him for the years 1887 and 1888, for which he sued. He also pleaded in another count in his petition an alleged accounting had between himself and defendants on July 16, 1889, showing

a balance in his favor.  Defendants pleaded a general denial, and answered specially, admitting the execution of said contracts, which they averred they had performed on their part, but that plaintiff had neglected and failed to sell the lumber cut by defendants, so that it accumulated at the mill and prevented said mill being run at its full capacity, to their damage $6750; also, that on account of plaintiff's failure to sell as he contracted to do, said lumber remained in stock, and became mildewed and deteriorated in value, and defendants were obliged to turn out and seek a market for themselves, by reason of which they claimed further damage of $5000.  They set up also an account of transactions between plaintiff and themselves, showing balance due them by the plaintiff.  They charged that sales to the amount of $15,557.02 were made by them, with the consent of the plaintiff, who was unable to sell all the lumber cut by the defendants; and that the commissions thereon amounted to $1555.70, to their further damage.

Plaintiff replied by general denial, and alleged also that if he failed to sell all the lumber cut by the defendants it was because of their failing, neglecting, and refusing to ship lumber and fill the orders given to them by plaintiff, etc.  The case proceeded to trial before a jury, and judgment was rendered in favor of the plaintiff for $1561.46.

*Conclusions of Fact.*—1.  The plaintiff, John D. Peyton, was a lumber broker, and resided at Trinity, in Trinity County.  The defendants, C. Bender, Sr., and C. Bender, Jr., composed the firm of C. Bender & Son, and as such were engaged in a saw mill and lumber business in the county of Polk, on the Houston East & West Texas Railway.

2.  On the 25th of February, 1887, the plaintiff and defendants entered into a contract, which was to continue in force for twelve months from March 1, 1887, by which plaintiff was to advance to the defendants money and supplies to the extent of $4000, for the operation of their saw mill at Curry, and to sell all the product of said mill, for which he was to receive a commission of 10 per cent.

3.  On the 14th day of January, 1888, the said parties entered into another contract for the year 1888, as follows:

"*The State of Texas, County of Polk.*—Know all men by these presents, that we, John B. Peyton, of the county of Trinity and the said State of Texas, of the first part, and Bender & Son, of the said county of Polk, of the second part, have made and entered into the following contract and agreement, to-wit:  Said contract is to take effect and be in force from and after January 1, 1888.  Said contract is to continue for a period of twelve months; that is, until January 1, 1889.  Said Peyton on his part agrees and obligates himself to advance and furnish to the said Bender & Son as much as $4000, which advances are to be made as fol-

lows, to-wit, $2000 in merchandise and stock feed, from time to time as needed, and $2000 in money to be advanced as follows, to-wit, $750 by January 10, 1888; $250 on February 10, 1888; $250 on March 10, 1888; $250 on April 10, 1888; $250 on May 10, 1888; and $250 on June 10, 1888. During the continuance of this contract said Peyton is to sell all the lumber cut by Bender & Son on their mill in the said county of Polk, situated at Holshousen, on the Houston East & West Texas Railway.

"Said Peyton also is to exert himself to make sales of said lumber so cut, obtain the best possible price, etc. On the 10th of each month said Peyton is to turn over to said Bender & Son all collections made by him up to the first of said month. He, the said Peyton, is also to use diligence in making collections for lumber sold. All feed, merchandise, etc., bought by said Peyton is to be consigned to and owned and controlled by said Peyton, but the said Bender & Son are to have the profits on same. A clerk is to be employed to take charge of the store and lumber shipping, who is to represent the interest of both parties to this contract. Said clerk is to be paid by Bender & Son. Should said clerk so employed fail to represent the interest of both parties to this contract, then either party becoming dissatisfied with him may have him discharged, in which event another clerk shall be employed to take charge of said business. Said Peyton is to receive in consideration of the money, merchandise, feed, etc., advanced by him, and for his services in making sales of lumber, making collections, etc., 10 per cent on all sales of lumber, which is to be charged up monthly. On any day of settlement the advances in money, merchandise, feed, etc., are not to exceed more than bills receivable and the lumber in stock, estimated at $5 per thousand feet. At the expiration of this contract, the said Bender & Son are to pay back the said $4000 advanced by said Peyton as above stipulated.

"Said Bender & Son, a firm engaged in the saw mill and lumber business in said county of Polk, and composed of Charles Bender, Sr., and Charles Bender, Jr., hereby agree and bind themselves to put their mill at Holhousen, on the Houston East & West Texas Railway, in the said county of Polk, in good condition, and they further bind themselves to log and run it to its full capacity, cutting and stacking the same, and shipping all the lumber cut to the order of said Peyton. They further bind themselves to construct and put in operation at an early date a good planer in connection with said mill.

"It is further understood and agreed, that all lumber cut from January 1, 1888, until January 1, 1889, is to be bound to said Peyton for advances, and handled by him, the said Peyton, under the terms of this contract. It is also understood and agreed, that all lumber on the yard of said mill on the 1st day of January, 1888, is bound to said Peyton for advances furnished and to be furnished as above stipulated, and is to be sold by him, shipped to his order, etc.

"In testimony of the above, we hereby subscribe our names, on this the 14th day of January, 1888.

　　　　　　　[Signed]　　　　　　　　　　　　"JOHN B. PEYTON,
　　　　　　　　　　　　　　　　　　　　　　"Party of the First Part.
　　　　　　　　　　　　　　　　　　　　　　"C. BENDER & SON,
　　　　　　　　　　　　　　　　　　　　　　"Party of the Second Part.

"Witness: B. H. HOLMES."

4. On March 4, 1888, appellee bought one-third interest in the McDuffie mill in Trinity County, and entered into a contract of partnership with Eliza A. McDuffie, under the firm name of McDuffie & Peyton, "to conduct at McDuffie Switch, in Trinity County, Texas, a general saw mill, lumber making, store, commissary, and business usual in the lumber business, excepting speculating in the purchase and sale of lumber not manufactured by them, which is not permissible."

Said Peyton obligated himself to give to said partnership business his attention and general control and supervision, to sell all lumber, to collect all bills, to see that the indebtedness of the firm was properly paid, to purchase all goods and supplies, to pay off all laborers, and to do and perform all acts usually performed by the principal head of a copartnership. An office, containing all the books, papers, correspondence, etc., pertaining to the business, was required to be kept at the mill at McDuffie Switch, but it was contemplated in said contract that the said Peyton would continue his residence at Trinity, from which place the correspondence might be conducted. For his services above stated as managing partner of McDuffie & Peyton, the said Peyton was to receive the sum of $100 per month.

5. Business was commenced in accordance with said contracts between plaintiff and defendants, the former making the advances of money and supplies as he undertook to do, and selling the lumber of defendants, which they shipped out on his orders; and it appears to have been continued substantially in compliance with said contracts until after the organization of the firm of McDuffie & Peyton. But after said time, and during the latter part of the year 1888, appellee's sales for Bender & Co.'s mill amounted to only $3838.88, while defendants themselves made sales to the amount of $15,557.02. There was a conflict of testimony as to the reason why appellee did not sell the lumber as required by the contract, but upon the issue as to whether or not the plaintiff failed to exert himself and to use diligence to sell defendants' lumber, the jury found for the plaintiff, and the verdict is sustained by the evidence, unless we should hold that the contract of partnership between the plaintiff and Mrs. McDuffie was of itself a breach of the contract between him and the defendants.

*Conclusions of Law.*—1. Appellants' tenth assignment of error is the first presented in their brief, and is as follows:

" The evidence in this case shows that defendants did not violate either the contract of 1887 or the contract of 1888, and that plaintiff did violate the said contract of January 14, 1888, and by a subsequent contract made by him with Eliza A. McDuffie, did put himself in a position directly antagonistic to defendants' interest, and did thereby forfeit and violate the said contract of 1888."

It is objected by the appellee, that this assignment does not specifically point out any error; but we think that it presents the question whether or not the subsequent contract of partnership entered into between the plaintiff and Mrs. McDuffie was ipso facto a violation of his contract with the defendants. The jury found, by rendering a verdict in favor of the plaintiff, that he had exerted himself to make sales of all of the lumber cut by the defendants, as required by the contract, and there is evidence to support the verdict. Neither the contract with defendants nor the contract of partnership with Mrs. McDuffie called for the entire service of the plaintiff, and there is nothing in the two contracts that renders them so antagonistic to each other that the latter would of itself be a violation of the terms of the former. The contract of partnership was undoubtedly very pertinent evidence tending to show, in connection with other testimony, a violation by the plaintiff of his contract with the appellants, but it all went properly to the jury for its determination of the issue.

As maintained by the appellant, the second proposition under the tenth assignment, to the effect that appellee, having the power to discharge the shipping clerk, could not complain of the failure of appellants to ship lumber to his order, is not supported by the assignment.

2. Upon the trial the court allowed the plaintiff to put in evidence, over the objection of defendants, the testimony of witnesses to show what amount of lumber, the different classes of lumber, and the amount of dry lumber that should be carried in stock by a saw mill to enable it to fill the usual run of orders; the objection was, that the issue was not raised by the pleadings nor warranted by the terms of the written contract in evidence. The stipulations in the contract with reference to the sales of lumber are:   " During the continuance of this contract said Peyton is to sell all the lumber cut by said Bender & Son on their mill in the said county of Polk, situated at Holshousen, on the Houston East & West Texas Railway. Said Peyton is to exert himself to make sales of said lumber so cut, obtain the best possible price," etc.  " It is further understood and agreed, that all lumber cut from January 1, 1888, until January 1, 1889, is to be bound to said Peyton for advances, and handled by him, the said Peyton, under the terms of this contract." Evidence of usage is not admissible to vary the terms of a contract, but it may be received in explanation thereof. Peyton was not by the very terms of the

contract to sell " all " of the lumber cut by the defendants on their saw mill, but he was to exert himself to do so. His explanation of his failure to do so was, that the defendants failed to ship the lumber on his orders; that they shipped out on their sales the best and most saleable grades, and a stock was left from which his orders could not be filled. Appellee testified, that if appellants had cut and stacked the lumber as they agreed to do, and put it into a marketable condition, and not have broken the stock as they did by selling the better and most saleable kinds, he could and would have sold every foot of lumber cut out by them. It is very true that parties to a contract are bound as they bind themselves, but they contract with reference to the usages of the particular trade or business about which their agreement is made. The evidence was pertinent to the issue as to whether or not the plaintiff was in default in failing to sell " all " defendants' lumber, and there was no error in admitting the same, and no pleading was necessary.

3. There was no error in admitting the written memoranda made by the parties in their effort to settle in July, 1889. Plaintiff testified, that he and the defendant C. Bender, Sr., on the 10th day of July, 1889, had an accounting together, or an attempt to adjust their differences in accounts; that they checked up and agreed to all the differences then, except commissions on sales of defendants from August 1, 1888, to January 1, 1889, and commissions on lumber on hand January 1, 1889; and that the memoranda was made out at the time as a basis to act on, and had been agreed to excepting commissions as before stated. Defendant objected, that it did not show an account or an account stated. In explanation of the ruling, the trial judge, in signing the bill of exceptions, stated, that the plaintiff testified that the defendant Bender, Sr., had agreed to the items, and had the instrument made out by his clerk, and ordered it copied in his letter book. That it was admitted not as an account stated, but as bearing on the question of general indebtedness, and the jury was so informed.

4. The next assignment of error is objected to by the appellee as too general, and the proposition under it not germane to the assignment. We think, however, that the questions sought to be raised by this assignment are disposed of in our consideration of the admission of the testimony of the witnesses with reference to the character of stock of lumber necessary to be carried. The charge complained of does not submit the construction of the contract to the jury, especially when taken in connection with other portions of the charge. There was no error for which the judgment should be reversed in the stating of the amount claimed in the petition at a greater sum than was admitted to be due, as the verdict of the jury was evidently not affected by it, nor is the question properly raised by an assignment of error.

5. Counsel for plaintiff, while addressing the jury, stated as evidence matter that had been offered and excluded. No objection was made by counsel for defendants, nor was there any notice taken of it at the time. The judge, in giving a bill of exceptions, stated that he didn't remember the language used by counsel as stated, but thought it was correct. The statement was, that Peyton told Mrs. McDuffie and her counsel, Mr. Hill, at the time the contract of partnership was made, "that he could only give half his time to the McDuffie mill." No cause for the reversal is shown.

There is nothing further that requires the attention of the court. The case is one of fact, in which the issues have been determined by the jury in favor of the plaintiff; and having been submitted on evidence properly admitted, and no error being shown, the judgment rendered thereon will be affirmed.

*Affirmed.*

Delivered September 21, 1893.