## LATTA v. TRANSIT GRAIN CO.
### No. 5963.

Court of Civil Appeals of Texas. Amarillo.
June 20, 1949.

Rehearing Denied Aug. 29, 1949.

Burks & McNeil, Lubbock, and Ayres & Ayres, Floydada, for appellant.

Simpson, Clayton & Fullingim, Amarillo, and Simon & Simon, Fort Worth, for appellee.

STOKES, Justice.

During the year 1947, V. G. Petta and his partner, J. E. Duncan, owned and operated a grain elevator at Crosbyton under the trade-name of Cros-Tex Grain and Feed Company. Appellant, W. A. Latta, owned and operated a wheat farm in Crosby County and, during the months of June and July, 1947, he harvested his crop and delivered to the Cros-Tex Grain and Feed Company for storage 429,440 pounds of wheat. On July 23, 1947, he sold to Petta and his partner all of the wheat except 3,-333⅓ bushels and was paid therefor the market price at that time. The portion not sold was left with the grain company for storage in its elevator and in November, 1947 Petta and his partner sold appellant's wheat, along with other wheat which they then had on storage, to the appellee, Transit Grain Company, a corporation with its office and principal place of business located at Fort Worth in Tarrant County. The testimony showed that, on April 7, 1948, appellant called for an adjustment and informed Petta that he was then ready to

settle for the 3,333⅓ bushels which he had left on storage in the elevator. In the meantime Petta had bought the interest of his partner, J. E. Duncan, and a calculation between him and appellant revealed that, upon the basis of the then market price, Petta was indebted to appellant in the sum of $6,651.13. Petta assured appellant he would arrange to pay for the wheat within a short time but the record shows that he was unable to do so at any time thereafter. It further shows that on. May 19, 1948, Petta filed a petition in bankruptcy and was discharged as a bankrupt on September 14, 1948.

On August 11, 1948, appellant filed this suit in the district court of Crosby County against V. G. Petta, J. E. Duncan, and the appellee, Transit Grain Company, alleging they had converted his 3,333⅓ bushels of wheat and prayed for judgment against them, jointly and severally, for its value.

Appellee filed its plea of privilege to be sued in Tarrant County which was duly contested by appellant and, upon a trial of the issues thus made, the plea of privilege was sustained, the cause of action as to it being severed and ordered transferred to the district court of Tarrant County.

Appellant duly excepted to the judgment and presents the case in this court for review, contending that the court erred in sustaining appellee's plea of privilege because he had alleged and proved delivery of his wheat to the resident defendant, Petta, for storage under a contract of bailment and had shown a conversion of it by both of them through the sale by Petta and purchase by appellee. He contends, therefore, that Petta and appellee became liable to him, jointly and severally and that, if the causes of action against them were not the same, they were so closely connected that they might properly be joined under the rule designed to avoid a multiplicity of suits.

At the request of appellant the court filed findings of fact and conclusions of law in which it found that the general custom in Crosby County and vicinity during the year 1947 for storing of grain was that the one storing it could, on any day in the future, by making demand, receive the prevailing market price as of that day for such grain; that, under such prevailing practice and custom, grain so placed in an elevator for storage was not intended to remain there but was to be handled and disposed of as the elevator, or those operating it, might desire; and that the Cros-Tex Grain and Feed Company accepted appellant's wheat pursuant to such general custom and practice and upon its understanding that, upon demand in the future by appellant, it could pay for the wheat at the current market price. It was further found that, in April, 1948, appellant demanded of Petta an accounting for the wheat he had stored in the elevator and Petta was unable to account for the same with the exception of 191⅙ bushels, which the record shows was all of the wheat then on storage in the elevator. The court further found that, at the time of such demand, appellant did not expect to receive the identical wheat which he had stored in the elevator, or even an equal amount of wheat of the same grade, but was willing to receive as purchase price therefor the prevailing market price. It further found that, in August, 1947, the Cros-Tex Grain and Feed Company shipped a large amount of wheat, including appellant's wheat, to appellee, Transit Grain Company, at Fort Worth, with directions that it be stored there, and that appellee arranged for its storage in the elevator of Burrus Mill and Elevator Company at Fort Worth. It was further found that, prior to November 1, 1947, appellee purchased from the Cros-Tex Grain and Feed Company 38,843⅝ bushels of wheat, including the 3,333⅓ bushels which appellant had left in storage with the Cros-Tex Grain and Feed Company and paid the market price therefor; that the wheat so purchased was delivered to appellee out of the mass of wheat in storage in the elevator of the Burrus Mill and Elevator Company at Fort Worth; and that Petta then intended to account to appellant for the value of his wheat at such time as appellant might make demand therefor. It was further found, and the undisputed evidence showed, that appellee had its residence, offices and principal place of business at

Fort Worth in Tarrant County and that V. G. Petta was a resident of Crosby County.

The controlling issue made by the appeal presents for determination the question of whether the transaction between appellant and the Cros-Tex Grain and Feed Company amounted to a bailment or constituted a sale of appellant's wheat. Appellant pleaded a bailment and conversion of his wheat by Petta and appellee which he contends resulted from the shipment of his wheat to Fort Worth and the sale to, and the purchase of it by, appellee. Appellee answers the contentions of appellant by the assertion that, while appellant pleaded a bailment of his wheat to the Cros-Tex Grain and Feed Company, the evidence showed that a sale was effected by the transaction.

■ Whether such a transaction resulted in a bailment or a sale always presents a difficult question. It is a general rule, however, that, if the storer, or one depositing the commodity for storage has or retains the option of accepting the market price or the return of the commodity or a commodity of like kind, quality and quantity, the transaction constitutes a bailment; but, if the option to pay for the commodity at the market price or its return in like quality and quantity is with the warehouseman, or person with whom it is deposited, the transaction is a sale. Kimbell Milling Co. v. Greene, 141 Tex. 84, 170 S.W.2d 191; Stricklin v. Rice, Tex.Civ.App., 141 S.W.2d 748, and authorities there cited.

■■ We have carefully examined the evidence and, in our opinion it amply supports the finding of the trial court that the wheat was delivered to the Cros-Tex Grain and Feed Company by appellant and accepted by it pursuant to the general custom and practice in respect to such transactions and that such general custom and practice in Crosby County and vicinity was that the one storing such grain may, on any day in the future, make demand and receive the prevailing market price therefor as of the date of such demand. The rule is well established in this state and every other jurisdiction in this country that persons are always presumed to contract with reference to a uniform and well-settled custom or usage pertaining to the matters concerning which they contract. Consolidated Kansas City Smelting & Refining Co. v. Gonzales, 50 Tex.Civ.App. 79, 109 S.W. 946; Bender v. Peyton, 4 Tex.Civ.App. 57, 23 S.W. 222; Holder v. Swift, Tex.Civ.App., 147 S.W. 690.

Moreover, appellant testified to numerous conversations with Petta and Duncan concerning the conditions under which the wheat would be accepted for storage, prior to the time he delivered it to them, and he said, in effect, that they told him they could buy the wheat when he was ready to sell it if they would pay as much as others would pay for it and that "they would take and handle it just like everybody else handled wheat, that is, with reference to selling part of it and I could store whatever I wanted to store." He further said that he knew it was not the practice of elevators to keep the identical grain harvested from his crop and stored by him in the elevator but that it was accounted for by grade. He further said that he knew they might sell the actual grain, which he delivered to them but that he was selling on grade and that grain was handled in that way unless one had a special granary in which to store it. V. G. Petta testified that the common and accepted meaning of the word "storage" was that, when owners of grain delivered it to the elevator for storage, it would be placed in the elevator until the owner desired to sell it and, when he so desired, the owners of the elevator had the privilege of buying it. Evelyn Lowry testified as a witness for appellee that she was employed by the elevator owners for several years, both before it was acquired by Petta and Duncan and during the season of 1947, when they owned it. She was present during some of the conversations between appellant and J. E. Duncan and she said Duncan told appellant he would pay appellant for the stored wheat whenever appellant desired to sell it and that appellant expressed no objection to that arrangement. She further testified that the meaning of the word "storage" in grain transactions implied that if one left wheat for storage, he left it in the elevator, or a terminal elevator under the supervision of

the first elevator and with the understanding that, at any time the owner was ready to receive pay for the wheat, he could demand it of the elevator in which it was originally deposited for storage.

The court concluded that the cause of action proved by the testimony was one for debt and accounting which arose on April 7, 1948, when V. G. Petta, the then owner of the elevator at Crosbyton, failed to pay to appellant the purchase price of the wheat upon appellant's demand therefor. This conclusion implies that the transaction of June and July, 1947, in which appellant stored his wheat in the Cros-Tex elevator at Crosbyton constituted a sale of the wheat to Petta and Duncan, to be paid for by them at such time as appellant demanded it and at the market price which prevailed at that time. As we have already said, the findings of fact and conclusions of law in this respect were fully supported by the evidence and we are not justified in disturbing it. Since Petta and Duncan became the owners of the wheat when it was deposited in their elevator, they had the right to sell it to appellee and, under those circumstances, no joint cause of action existed in appellant's favor against Petta and appellee nor was there any cause of action in appellant's favor against appellee which was in any manner connected with his cause of action against Petta and Duncan.

Appellant testified that, on several occasions, in conversations with Petta and Duncan, they told him they would keep his wheat in storage and that they would either pay him the market price for it or deliver to him wheat of the same grade and quantity as he might desire. Under this testimony of appellant, the option of electing whether he would accept the market price of the grain or a return to him of grain of like quantity and quality was with appellant and the transaction resulted in a bailment of the wheat to the Cros-Tex Grain and Feed Company. Petta testified, however, that there were no previous arrangements between him and appellant concerning the wheat and that the wheat was received for storage under the same conditions and arrangements that it was received from others. Evelyn Lowry testified that, on July 23, 1947, when appellant sold to Petta and Duncan all of his wheat in excess of the 3,333⅓ bushels, J. E. Duncan told appellant that they would pay him for the wheat left in storage at any time he was ready to sell it. This testimony, together with the testimony concerning the general practice and custom in Crosby County and vicinity concerning such transactions, was in direct conflict with appellant's testimony last above detailed and the trial court resolved it in favor of the contention of appellee. Under those conditions and the rule announced many times by our courts, we are bound by the finding of the court below and are not authorized to interfere with it.

Appellant presents other assignments and points of error contending under them that venue in the district court of Crosby County was not defeated by Petta's discharge in bankruptcy subsequent to the filing of the suit, as pleaded by Petta, and that the cause of action alleged and proved by him against the defendant Petta was one for intentional sale, without lawful excuse, of wheat delivered to him for storage under a contract of bailment and his liability for willful and malicious injury to property in consequence of which it is excepted from discharge in bankruptcy. Since we have concluded that the evidence abundantly supported the finding of the trial court that the transaction between appellant and Cros-Tex Grain and Feed Company constituted a sale and that appellant's cause of action is upon a contract of sale and not a bailment, these questions become immaterial to this controversy and do not require further discussion.

We have carefully examined all of the assignments of error and contentions presented by appellant and, in our opinion, none of them presents reversible error. The judgment of the court below will therefore be affirmed.