Lee D. GEORGE, d/b/a George Consolidated, Appellant,

v.

EL PASO COUNTY WATER CONTROL & IMPROVEMENT DISTRICT NO. 1, Appellee.

No. 5366.

Court of Civil Appeals of Texas.

El Paso.

Jan. 6, 1960.

Rehearing Denied Feb. 24, 1960.

Scott, Hulse, Marshall & Feuille, El Paso, Boone & Kraft, Houston, for appellant.

Hardie, Grambling, Sims & Galatzan, Wm. T. Deffebach, El Paso, for appellee.

FRASER, Justice.

This is a suit arising under a sewer extension and installation contract, in which appellant, contractor, sued the Water District, appellee, for breach of contract, or, alternatively, for extra and additional work under the contract. The controversy arose over the repair of streets that had been broken by trenches for installation and extension work. Shortly after the work began, the consulting engineer, Ashley G. Classen, notified appellant that they were not replacing the paving surfaces in accordance with the contract. Appellant maintained that it was only obligated to repair or replace the paving surface with the same type or kind of paving surface or construction that existed at the place of the break. Appellee maintained that the contract provided that, with the exception of driveways (which are not here involved), the streets had to be repaired with cement if it was a cement surfaced street, or a hot mix type of asphaltic dressing applied on a bed of caliche and crushed rock or hard stone particles. The appellant went ahead and did the work in accordance with the engineer's directions, and then brought this suit to recover for breach of contract, or additional work. The trial court granted a summary judgment, from which the appellant has prosecuted this appeal.

Appellant's points of error allege the existence of a fact question and dispute the court's interpretation of the contract. It takes the position that there were a number of streets that had what appellant describes as an oil penetration course surface, with no base, or a caliche base, and that appellant's bid, as provided in the contract, was to replace such in kind and type. This, of course, is a much cheaper operation, as it has been described as the spraying of asphaltic oil and then the application of rock particles on only a caliche-type base.

We have reached the conclusion that the trial court was correct in its disposition of this matter by the rendition of a summary judgment in favor of the appellee.

We believe the following excerpts from the contract, which was signed by all parties, will be of value, and therefore reproduce it herein:

Page 46 of Contract:

*"Repairing and Replacing Pavement*

*"General.* That portion of the surfacing or paving of *all* streets and alleys where such surfacing or paving is removed, broken into or damaged by the installation of this improvement shall be resurfaced or repaved with a like material *as hereinafter specified.* Payment for repaving or replacement of paving surfaces will be approved or allowed only at such locations and in such quantities as may be necessary to replace pavement or surfacing necessarily removed in order to install pipe, conduits and appurtenances. No pavement or street and alley surfacing shall be paid for which is damaged or removed by virtue of errors made by the Contractor or by reason of negligence on the part of his forces and equipment. * * *" (Emphasis ours.)

Page 47 of Contract:

"(a) *Asphalt Pavement.* The pavement shall be broken to neat trench lines. Before patching material is placed, the trench shall be backfilled as specified under 'Excavation'. The backfill shall be subject to compaction by traffic for at least twenty-one (21) days,

during which time the trench lines shall be kept raised above the level of the adjacent paving. At the expiration of this compaction period, the backfill shall be excavated to a depth of seven inches (7") below the top of the pavement and the remainder of the excavation up to the bottom of the wearing course of the pavement shall be filled with flexible base material consisting of a mixture of caliche and crushed stone, such mixture to contain not less than fifty percent (50%) of hard stone particles. The flexible base material shall be crushed to a maximum size of that passing a 2" screen opening. After the flexible base material is placed it shall be thoroughly wet and compacted by tamping with a pneumatic tamper. The tamping shall be continued until the material, in the opinion of the Engineer, has reached a state of maximum compaction. The paving surface shall then be restored and replaced in not less than the same thickness as the original surfacing material, but in no case less than one and one-quarter inches (1¼") in thickness, by the application of hot-mix asphaltic concrete or rock asphalt wearing course material."

Page 7 of Contract:

" * * * any question of the fulfillment of said specifications shall be decided by the *engineer,* and said work shall be done in accordance with his interpretations of the meaning of the words, terms or clauses defining the character of the work."

" * * * The Engineer will be represented by assistants and inspectors authorized to act for him. On all questions concerning the acceptability of material or equipment, the classification of material, the execution of the work, conflicting interests of Contractors performing related work and the determination of costs, the decision of the Engineer shall be final."

Page 9 of Contract:

"If the work or any part thereof, or any material brought on the site of the work for use in such work or selected for the same, shall be deemed by the Engineer as un-

suitable or not in conformity with the Specifications, the Contractor shall, if so ordered or requested by the Engineer, forthwith remove such material and rebuild or otherwise remedy such work so that it shall be in full accordance with this Contract."

There are several other portions of the contract which endowed the engineer, Ashley G. Classen, with full authority to interpret specifications and require work to be done in accordance with the engineer's requirements; as, for example, on page 21, paragraph 17, in discussing payment for work, the contract states that he shall be paid for performing the work according to the agreement, the attached specifications, and requirements of the engineer. Then, on page 77, the first paragraph of the proposal submitted by the Contractor states that he is cognizant of all conditions and has been fully advised as to the extent and character of the work.

We think it is clear that this contract specifically required appellant to repair all streets as set forth in the contract. This contract states clearly, as set out above, that the streets "shall be resurfaced or repaved with a like material *as hereinafter specified*". (Emphasis ours.) The only specifications following this statement in the contract relate to (a), asphalt pavement; (b), cement concrete pavement, and driveways. We think this language is clear and specifies the duty of the contractor to replace the paving as "hereinafter specified." Under these specifications, there is no provision made for the oil penetration process, but all asphaltic paving has to be done in accordance with paragraph (a), page 47, which the contractor did do, but now claims additional compensation for so doing. It is clear that the engineer was here authorized and empowered to oversee this work, and to insure that the specifications of the contract were fully met; and, as shown by the excerpts above, the engineer's decision as to the classification and acceptability of material was to be final. The deposition of engineer, Mr. Ashley G. Classen, explains the reason for requiring a better type of patch, or repair job, than the existing pavement or surface. However, we do not find any ambiguity or misunderstanding in the contract as written, and it is our finding that the contract clearly required appellant to patch the streets in accordance with paragraph (a), page 47 of the contract. We do not find sufficient support for appellant's position that he had only to restore the surface with the same materials that existed when he began the work. If explanation be needed, it is found in the deposition of the engineer, in which he relates a history of misfortune by appellee along these lines, and accounts for their determination to require the type of pavement or surface restoration that the contract called for.

We do not think any fact questions exist, as it seems clear to us that the entire controversy rests on the terms of the contract. Having found them to be clear and unambiguous, there remains no fact question. Appellant completed the work, and now here brings suit for additional payment. The contract does not provide for such. We do not cite authorities on the subject of summary judgments, as the cases regulating the application of summary judgment principles have become elementary, and to cite these well-known decisions would merely encumber the record.

The rest of the controversy depends on the terms of the contract which, as we have stated above, appear to us to have required the appellant to do that which he did, for the payment which he agreed to take; and he would not, therefore, be entitled to additional compensation under either theory advanced by him.

Appellant has also urged that there was no "meeting of the minds", in that appellant misunderstood the pavement replacement provisions of the contract. He also urges that usages and customs pertaining to this type of business should have been admitted in evidence to explain the contract. Also, he urges that certain provisions of the contract were waived by alleged oral conversations between appellant

and a member of the Board of appellee. This contract is so clear and incisive in its provisions that there can be no question as to the meeting of the minds of the parties who executed it. The same clarity and incisiveness rules out the necessity or propriety of admitting any evidence, such as usage or custom, to explain its terms. For the same reasons, and because we have found it to be unambiguous and containing no provision for oral alteration, there can be no merit in the appellant's contention of an alleged oral change or alteration. Where a contract is, as this one is, clear, unambiguous and incisive, it must stand as written and be enforced accordingly. Tower Contracting Co., Inc. v. Flores, 157 Tex. 297, 302 S.W.2d 396; Miller v. Gray, 136 Tex. 196, 149 S.W.2d 582, 141 A.L.R. 1237; Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154.

Our disposition of this matter makes it unnecessary for us to pass on the motion to strike the supplemental brief filed herein.

Appellant's points are accordingly overruled, and the decision of the trial court is affirmed.