**S. K. Y. INVESTMENT CORPORATION,**
Appellant,

v.

**H. E. BUTT GROCERY COMPANY,**
Appellee.

No. 473.

Court of Civil Appeals of Texas.

Corpus Christi.

May 8, 1969.

Keys, Russell, Watson & Seaman, William H. Keys, Corpus Christi, for appellant.

Sorrell, Anderson & Porter, Charles R. Porter, Jr., Corpus Christi, for appellee.

## OPINION

GREEN, Chief Justice.

This appeal is from a take-nothing summary judgment in a damage suit brought by appellant S.K.Y. Investment Corporation against appellee H. E. Butt Grocery Company for alleged breach of contract. The summary judgment evidence consists of the pleadings of the parties, answers to interrogatories propounded by appellee to appellant, and affidavits and counter affidavits, with exhibits attached.

It was shown by such evidence that appellant was a corporation created to acquire, construct, lease and operate a shopping center to be located in Kingsville, Texas, with the name "Sky Way Mall Shopping Center." Prior to entering into a lease contract with appellee, appellant had obtained a purchase option for land and had contacted various other business concerns who might be interested in leasing portions of the shopping center proposed to be constructed by appellant. After negotiations, appellant as Landlord and appellee as Tenant executed a written lease agreement dated March 21, 1967, under the terms of which appellee would occupy a portion of the center. Construction work on the center had not been started when the lease was executed, and the contract contained the following provision:

*"Article 2*

\* \* \* \* \* \*

B. If prior to September 1, 1967, construction work has not commenced upon the building containing the demised premises, Tenant may thereafter at its option cancel this lease, by giving notice to the Landlord of its option to cancel on or before March 1, 1968. \* \* \*"

Appellee's motion for summary judgment was based, in part upon its contention that construction upon the demised premises had not commenced by September 1, 1967. By letter dated September 1, 1967, appellee gave notice to appellant that since construction work had not commenced, appellee was exercising its election to cancel and terminate the lease.

Appellant alleged its cause of action in alternate counts. It pleaded (1) that construction had commenced by September 1, 1967, and that appellee's attempted cancellation constituted a breach of the con-

tract, and (2) in the alternative, that if construction had not commenced by that date, failure to so commence was caused by the breach by appellee of obligations that appellee owed under the contract in (a) failing to furnish details for the working plans and specifications to be prepared by appellant and approved by appellee, and/or (b) in failing to furnish requested financial information necessary to the procurement of long term financing.

In passing upon the points raised on this appeal, we shall be guided by the rules concerning summary judgments established by our State Supreme Court. Rule 166–A, Texas Rules of Civil Procedure provides that summary judgments shall be rendered where the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The burden of proof is on the movant, and all doubts as to the existence of a material fact issue are resolved against him. Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company, Tex., 391 S.W.2d 41. The duty of the court is to determine if there are any genuine issues of a material fact to be tried, and not to weigh the evidence or determine its credibility and thus try the case on the affidavits. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Gaines v. Hamman, 163 Tex. 618, 358 S. W.2d 557; Parrott v. Garcia, Tex., 436 S.W.2d 897. Affidavits supporting or opposing the motion must set forth such facts as would be admissible in evidence. They must be factual; conclusions of affiant are not considered to have any probative value. Box v. Bates, 162 Tex. 184, 346 S.W.2d 317; Crain v. Davis, Tex., 417 S.W.2d 53; Travis County Water Control & Improvement District No. 12 v. Mc-Millen, Tex., 414 S.W.2d 450.

Appellant by its first point of error asserts that a genuine issue of a material fact was raised as to whether appellant had commenced construction on the building in question prior to September 1, 1967. Appellee answers this in its first reply point by stating that the record shows as a matter of law that such construction had not been commenced on the date mentioned.

The conflict between the parties appears to be based on a difference of opinion as to what is meant by commencement of construction work. Factually, the record shows without dispute that the only work which had been done on the land prior to September 1, 1967, consisted of ground leveling and bulldozing of brush, etc., which was commenced on July 15, 1967, and completed prior to September 1, 1967. In this connection, the following interrogatories were asked of appellant, and the following replies given.

"15. Was construction commenced on the proposed Skyway Mall prior to September 1, 1967? If so, state the date such construction commenced and what work was completed or in progress on September 1, 1967. Also state who performed such work."

Answer:

"15. Yes. Site work, consisting of ground leveling and bulldozing of brush, etc., was commenced on July 15, 1967."

Question:

"16. Was construction commenced 'upon the building containing the demised premises' as described in the lease in question prior to September 1, 1967? If so, state the date such construction commenced and what work was completed or in progress on September 1, 1967. Also state who performed such work.

Answer:

"16. Unless site work may be construed as such, construction was not commenced 'upon the building containing the demised premises' because of Defendant's failure to submit its interior design requirements and to furnish the requisite financing information."

The latter part of this answer will be considered under subsequent points of error.

While the affidavit of appellant's president states his opinion that such site work constituted the commencement of construction, this was a mere conclusion of affiant, and had no probative force as evidence. Box v. Bates, supra.

The above answers of appellant to the interrogatories, together with affidavits attached to appellee's motion for summary judgment evidencing that on September 1, 1967, no construction work on any building had been commenced on the land in question, make it apparent that appellant relies solely on the site work and bulldozing to support its contention that construction work had commenced "upon the building containing the demised premises" by September 1, 1967. It was admitted by appellant that it did not own title to the land on that date, and that it had not obtained a building permit.

Appellant cites no authorities in support of its contention under its first point. Appellee states in its brief that a diligent search on counsel's part failed to disclose any Texas cases on the proposition of what constitutes commencement of construction work on a building, and we have found no such authorities. However, appellee cites us a number of out of state authorities, including an annotation in 1 A.L.R. 3rd 822, which are persuasive on this question. The cases come about through an attempt by a mechanic's lien claimant to cause his lien to be superior to a lien claimed by a deed of trust or mortgage lien holder, where the mechanic's lien proponent asserts that work had commenced upon the building before the inception of the mortgage or deed of trust lien. The rule of law that seems to govern is set out in Rupp v. Cline & Son, Inc., 230 Md. 573, 188 A.2d 146, 1 A.L.R.3rd 815, where the court said:

"These cases make it clear that before there can be the *commencement of a building* which would give a mechanics' lien claimant a preference over a recorded mortgage there must be (1) a mani-fest commencement of some work or labor on the ground which everyone can readily see and recognize as the commencement of a building and (2) the work done must have been begun with the intention and purpose then formed to continue the work until the completion of the building. If either of these elements is missing then there has been no 'commencement of the building' within the meaning of (a Maryland statute)."

See, also, Maule Industries, Inc. v. Gaines Construction Co., Fla.App., 157 So.2d 835, where the court held that the removing of the grass and scarifying of a portion of the land did not constitute a visible commencement of operations within the meaning of the lien statute, and other authorities cited in annotation in 1 A.L.R. 3rd 822 et seq.

We hold that the record shows without factual basis for dispute that construction work had not commenced upon the building containing the demised premises prior to September 1, 1967. Appellant's first point of error is overruled.

By its second and third points, appellant takes the position that even if it failed timely to commence construction upon "the building containing the demised premises", such construction was prevented and appellant's failure is excused by appellee's breach of the contract (1) in wrongfully failing to furnish its requirements for interior design to appellant's architect, and (2) in wrongfully failing to provide that financial information normally and customarily furnished to financial concerns interested in providing long-term permanent financing to owners of shopping centers.

When one party to a contract, by wrongful means, prevents the other party from performing, as by making it impossible for him to perform, such an action by the party at fault constitutes a breach of contract. The effect of such a breach is not only to excuse performance by the injured party, but also to entitle him to re-

cover for any damage he may sustain by reason of the breach. 13 Tex.Jur.2d, p. 557, p. 587, Contracts, § 307, § 325; Smith v. Lipscomb, 13 Tex. 532; Sanderson v. Sanderson, 130 Tex. 264, 109 S.W.2d 744, syl. (16, 17), op. adopted; City of Houston v. Howe & Wise, Tex.Civ.App., 323 S.W.2d 134, wr. ref. n. r. e.

Concerning appellant's contention that appellee breached the contract in wrongfully failing to provide that financial information normally and customarily furnished to financial concerns interested in providing long term permanent loans to builders of shopping centers, and that such breach of the contract prevented appellant from performing its obligations, appellant relied on an affidavit from its president, Clarence Yarbrough, Jr, and on appellant's answers to interrogatories propounded by appellee. The pertinent parts of the affidavit read as follows:

"As president of the corporation, I was charged with the responsibility of obtaining permanent financing of a long-term nature for the construction of the shopping center. This was within the contemplation of the parties to the lease agreement, and Defendant well knew that the successful acquisition of permanent financing depends upon the quality of the tenants within the proposed shopping center, their financial stability, the history of their operations, minimum rental to be received by Plaintiff under the respective leases, the terms of the leases, etc. Defendant also well knew, and it is a fact, that, normally and customarily, the concern which is to permanently finance the shopping center seeks and is furnished not only C.Y. balance sheets but also profit and loss statements from the proposed tenants. At all times material hereto, Defendant knew that Plaintiff was negotiating for permanent financing with Franklin Life Insurance Company and was aware that, as a condition for permanent financing, Franklin Life Insurance required Defendant to provide it with a profit and loss statement. On numerous occasions, I requested of Defendant that it furnish such profit and loss statement but Defendant continued to arbitrarily and capriciously refuse such information. As a direct consequence of such refusal on the part of Defendant, Franklin Life Insurance Company refused to approve the permanent financing sought by the Plaintiff corporation.

Permanent financing upon a project of this size takes time to arrange, and Defendant knew it. Franklin Life Insurance Company's refusal to approve the permanent financing sought by the Plaintiff made it necessary for other sources to be investigated, and action was commenced immediately to reach this end. By reason of Defendant's said actions, insufficient time remained within which to complete all the formal requisites of permanent financing by the time of Defendant's wrongful termination of its lease agreement on September 1, 1967, though at such time Plaintiff had reached an informal agreement with General American Life Insurance Company to provide such financing. Defendant at all times was well aware of the refusal of Franklin Life Insurance Company to approve the financing and the necessity of obtaining other financing. If there was a failure to commence construction of the premises to be used as a shopping center, which is not admitted but is denied, such failure was attributable solely to the failure of Defendant to furnish the information normally and customarily furnished by proposed tenants to concerns who will provide long-term financing for shopping centers."

In answer to interrogatories, appellant replied that if construction was not commenced it was in part because of appellee's failure to furnish requisite financial information and that it was because of such failure that Franklin Life Insurance Co., decided to cancel its financing arrangements. Appellant further answered that

the furnishing by proposed tenants of shopping centers of financial statements and/or profit and loss statements for inspection and approval by the lender of funds is customary, normal and usual in the negotiation and construction of a shopping center.

The statements in the answers to the interrogatories and in Yarbrough's affidavit as to the reasons given for the cancellation by the insurance company of its plans to finance this project are to a large extent conclusions and without probative force. Box v. Bates, supra; Crain v. Davis, supra. However, assuming that a fact issue was presented that the cause of appellant's failure to comply with its obligations was the failure of appellee to submit financial and/or profit and loss statements to the insurance company proposing to finance the construction, the summary judgment evidence does *not* raise a genuine issue of the *material* fact that appellee was under any legal obligation to furnish same.

A fact issue was raised as to a general custom, practice and usage of a party in appellee's position as Tenant to furnish the financial statements requested. Appellant cites the following cases as authority for the rule that parties to an agreement are presumed to have contracted with reference to general custom, practice and usage as to that particular business: Luling Oil & Gas Company v. Humble Oil & Refining Company, 144 Tex. 475, 191 S.W.2d 716 where the agreement was silent or obscure as to a particular subject; Bender v. Peyton, 4 Tex.Civ.App. 57, 23 S.W. 222, wr. ref.; Latta v. Transit Grain Company, Tex. Civ.App., 222 S.W.2d 467, n. w. h.; Stalcup v. Eastham, Tex.Civ.App., 330 S.W.2d 237, wr. ref. n. r. e., and other authorities.

As we understand and construe these authorities, they stand for the proposition that where a written contract is ambiguous or obscure, so that the intent of the parties is uncertain; or where it is silent on a matter that needs to be explained by extraneous evidence; or where it appears from the terms of the contract that other covenants were clearly contemplated to effect the purposes of the contract, evidence with reference to a uniform and well settled custom or usage pertaining to the matters with which they contract is admissible.

The contract in issue here was a full, well prepared instrument of some fifteen legal size pages, double spaced typing. Neither party makes any statement in its pleadings or briefs that the contract is unclear or ambiguous as to any of its terms, or that extraneous evidence is needed to explain any of its provisions. There are many provisions concerning the respective obligations incurred by the parties. There is *NO* provision concerning any obligation to furnish the financial statements referred to by appellant.

Article 14 of the contract contains the following agreement of the parties: *"No obligation or limitation not stated herein shall be imposed on either party hereto. * * *"* (Emphasis added).

In this situation, we hold that evidence of customs and usages would not be admissible to add to the obligations of appellee. Miller v. Gray, 136 Tex. 196, 149 S.W.2d 582, 141 A.L.R. 1237; City of Houston v. Finn, 139 Tex. 111, 161 S.W.2d 776, 778; George v. El Paso County Water Control & Improvement District No. 1, Tex.Civ.App., 332 S.W.2d 144, 148, wr. ref. n. r. e.; Kingsley v. Western Natural Gas Co., Tex.Civ.App., 393 S.W.2d 345, 353, wr. ref. n. r. e.; Republic National Bank of Dallas v. National Bankers Life Insurance Company, Tex.Civ.App., 427 S. W.2d 76, 80 wr. ref. n. r. e.

We hold that the law of this State, as demonstrated in the authorities above cited, is that where a contract is clear, complete, and unambiguous, and especially where it expressly provides that "no obli-

gation \* \* \* not stated herein shall be imposed on either party hereto," new terms can not be added to the contract by incorporating a usage or custom which would add to the contractual obligations of one of the parties.

The necessity of interior design requirements is emphasized by the affidavit of architect Turner, filed in opposition to appellee's motion for summary judgment. Turner is shown to be a licensed professional architect in Texas, employed by appellant to prepare preliminary working drawings and specifications for the proposed center. He referred to the portion of the contract which provided that "Construction of the demised premises by the Landlord shall be in accordance with plans and specifications to be prepared by Landlord and approved by Tenant," and stated that appellee's interior design was needed to merit appellee's approval of Landlord's plans and specifications. According to Turner, this information is normally and customarily supplied as a matter of course by tenants in proposed shopping centers. Requests were made by him of appellee for the information, and such information was withheld by appellee, even though it was necessary for completion of the working drawings and specifications, for cost estimating, and for negotiation of a construction contract. He stated in his affidavit that without the information requested of appellee, it was not possible to prepare grade elevations or commence site preparation and grading prior to September 1, 1967.

Affiant Yarbrough stated that he had requested appellee to furnish its interior design requirements, that same were refused, and that without such information grade elevations could not be prepared and only ground leveling and bulldozing on the ground could be done.

Assuming the facts to be as stated above, there still is no showing that appellee breached any of its contractual obligations. There was no provision in the contract re-

quiring appellee to furnish the information referred to. We again refer to the agreement of the parties stated in the contract in Article 14 thereof, supra. For the reasons heretofore stated in connection with the matter of furnishing financial statements, we hold that evidence as to business customs and usages concerning the furnishing of Tenant's requirements for interior designs was not admissible to add to the obligations expressly assumed by appellee in the written contract.

Appellant's second and third points of error are overruled.

Our decisions on the above points are decisive of this appeal. Appellee was entitled, as a matter of law, to the judgment which was rendered. It is, accordingly, unnecessary to pass on the other propositions raised and discussed in the briefs of the parties.

Judgment affirmed.