Florence **HICKS**, Individually and as Surviving Spouse of, and for the Houston Hicks Estate, et al., Appellants,

v.

**HUMBLE OIL AND REFINING COMPANY,** Exxon Corporation and Exxon Corporation, d/b/a Exxon Company USA, Appellees.

No. 14–97–00277–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 14, 1998.

Rehearing Overruled June 11, 1998.

Alton C. Todd, Charles M. Jordan, Houston, Otto D. Hewitt, III, Alvin, for appellants.

Gregory T. Kenney, Lonnie L. Johnson, Scott Rothenberg, Houston, for appellees.

Before YATES, AMIDEI and FOWLER, JJ.

## OPINION

AMIDEI, Justice.

Appellants (Hicks) appeal from a summary judgment for appellee (Exxon) in a damage suit. In three points of error, appellants contend the trial court erred in granting summary judgment because Exxon's summary judgment evidence was insufficient and there are genuine issues of material fact preventing summary judgment. We affirm.

## I. BACKGROUND.

Exxon bought a 45 acre tract in Webster in 1921 and dug two unlined earthen pits on the property, and used the pits for storage of crude oil. Exxon covered the storage pits with wooden covers which were destroyed by a tornado. Exxon abandoned the use of the pits for oil storage after the tornadoes and subsequently sold the tract to Thomas H. Hicks for $600.00 in 1945. Thomas Hicks gave his son and daughter small tracts in the eastern and southern corners of Lot 8 on the tract, and all members of the Hicks families built their homes on the land. Several members of the Hicks family filed suit in 1994 claiming Exxon was negligent in storing the oil on the land because that oil contaminated the land, and caused personal injuries to the Hicks family. Appellants' suit alleged negligence, negligence per se, nuisance, and strict liability claims against Exxon arising out of the oil storage in the 1920's.

## II. SUMMARY JUDGMENT.

Exxon filed its motion for summary judgment alleging: (1) Exxon was not negligent and owed no legal duty to Hicks; (2) Exxon was not negligent per se by violating environmental statutes and Railroad Commission rule 39; (3) Exxon did not create a nuisance; (4) Exxon was not strictly liable for any dangerous conditions caused by the oil storage pits; (5) Hicks' claims are barred by the statute of limitations and the statute of repose. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 & 16.009 (Vernon 1986 & Supp. 1998).

Appellants responded claiming Exxon did owe a legal duty, was negligent per se by violating environmental statutes and rule 39, did create a nuisance, was strictly liable, and was not barred by limitations and the statute of repose.

### A. Standard of Review.

A movant for summary judgment has the burden to show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c). To be entitled to summary judgment, a defendant must either (1) conclusively negate at least one essential element of each of the plaintiff's causes of action, or (2) conclusively establish each element of an affirmative defense to each claim. *See Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997). In reviewing a summary judgment, evidence favorable to the nonmovant is taken as true, and all reasonable inferences are indulged in the nonmovant's favor. *See Johnson Co. Sheriff's Posse v. Endsley,* 926 S.W.2d 284, 285 (Tex.1996). A summary judgment may be affirmed on any of the movant's theories which has merit. *See*

*Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 627 (Tex.1996). Appellate courts should consider all grounds for summary judgment the movant presented to the trial court when properly preserved for appeal. *Id.* at 625.

**B. Analysis.**

1. Exxon owed no legal duty to Hicks. In its motion for summary judgment, Exxon contended it owed no legal duty to Hicks as a matter of law because Exxon sold the property to Hicks in 1945; Hicks was aware of the existing earthen pits, and the fact Exxon stored oil in them. Appellants argue that the deed was silent as to the earthen pits, and it is questionable that an uneducated man such as Hicks had "actual notice" of the toxic *contamination* of the pits.

■ Exxon conveyed the property to Thomas H. Hicks by general warranty deed dated February 15, 1945, and a copy was attached to Exxon's motion for summary judgment as evidence of their transfer of the subject property. The deed is silent as to the presence of any earthen pits. As evidence of Hicks' "actual notice" of the presence of the pits, Exxon furnished the affidavit of Thomas H. Hicks, dated March 20, 1958, wherein he stated he knew Exxon had earthen storage pits on the land in 1921, which were covered with wood covers that were destroyed by a tornado. Appellants objected to Exxon's exhibits as not being properly authenticated but did not get a ruling of the trial court on any of their objections. By failing to secure rulings on their objections to Exxon's summary judgment proof, appellants have waived any complaint on this appeal as to their admissibility into evidence. *Roberts v. Friendswood Dev. Co.,* 886 S.W.2d 363, 365 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

In their response, appellants submitted an affidavit signed by one of the plaintiffs, Tommye L.H. Randolph, which stated Exxon never notified her father (Thomas Hicks) of the *contamination* of the land. Appellants presented no evidence negating the affidavit of

Thomas H. Hicks that stated he was well aware of the earthen pits on the land and the fact they had been used to store oil. Appellants did not present any evidence to controvert the deed to Thomas Hicks in 1945 or any other summary judgment evidence to controvert the fact Exxon had no ownership interest in the land after conveying it to Hicks.

■ Exxon argued in its motion for summary judgment that once it transferred the property to Hicks, its liability for any injuries on the property ceased. Generally, vendors of real property are not liable for injuries caused by dangerous conditions on real property after the conveyance. *First Fin. Dev. Corp. v. Hughston,* 797 S.W.2d 286, 291 (Tex.App.—Corpus Christi 1990, writ denied). However, there is an exception to the rule: when a dangerous condition exists at the time the vendor transfers possession, the vendor is not subject to liability for injuries caused to others while upon the premises after vendee has taken possession, unless the vendor does not disclose or actively conceals the existence of the condition. *Id.* This exception does not apply when the vendee discovers or should have discovered the dangerous condition and has a reasonable opportunity to take precautions, or when the vendee has *actual notice* of the condition. *Id.* at 291–92 (citing § 353(2) of Restatement).[1] *See also Roberts,* 886 S.W.2d at 367–68. Appellants have failed to demonstrate by competent summary judgment evidence that Thomas H. Hicks did not have actual notice of the existence of the tanks on the premises when he bought the land.

■ Appellants argue that Thomas Hicks had no notice of the *contamination* caused by the oil in the pits and contend the *contamination* was the "dangerous condition" requiring notice. Appellants cite no authority to support their argument that Exxon's duty was to disclose contamination that could allegedly arise from the oil storage. Hicks had actual notice of the earthen oil pits when he bought the land in 1945; they now allege

---

1. The supreme court has not adopted section 353 of the restatement. *Lefmark Management Co. v. Old,* 946 S.W.2d 52, 54 (Tex.1997). The supreme court stated section 353 did not apply to the facts in *Lefmark,* and that section 353 is limited in application to "vendors" of land. *Id.*

they suffered injury from contamination from oil that infiltrated the water supply from those pits. We find no authority to substantiate appellants' contention that Exxon had a duty to give notice of the *toxic contamination* that could result from the earthen pits, and appellants cite none. Because appellants had actual notice of the "dangerous condition" (the oil pits) when Thomas Hicks bought the land, we find Exxon established that it did not owe a legal duty to appellants, and the summary judgment was proper on this ground.

2. Negligence per se. In their response to Exxon's motion for summary judgment, appellants contend Exxon violated numerous statutes by putting the earthen pits on the property to store oil in 1921. Specifically, appellants contend that Exxon violated the Texas Water Pollution Control Act of 1961, the Texas Water Quality Act of 1957, and Chapter 26 of the Texas Water Code, and the Texas Clean Air Act of 1987, and the Sanitation and Health Section of former article 4477–1 of 1987 (now TEX. HEALTH & SAFETY CODE ANN. § 341.001, et seq. (Vernon 1992)). Each of these statutes was enacted after Exxon had ceased to operate the earthen storage tanks and cannot form the basis of a negligence per se claim. Appellants cite no authority holding these statutes should apply retroactively.

A statute is presumed to be prospective unless it is clear from a fair reading of the statute that the legislature intended it to apply to both past and present controversies. *Ex Parte Abell*, 613 S.W.2d 255, 258 (Tex.1981). Article I, section 16 of the Texas Constitution, prohibits retroactive laws. Section 311.022, Texas Government Code, provides a "statute is presumed to be prospective in its operation unless expressly made retrospective." A statute is retroactive, and thus prohibited, if it impairs vested rights acquired under existing laws. *See Trahan v. Trahan*, 894 S.W.2d 113, 118 (Tex.App.—Austin 1995, writ denied), *cert. denied*, 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1995). We find nothing in these statutes that would give retroactive application to Exxon's use of the land in the 1920's. Appellants' contention that installation of the earthen storage pits was negligence per se under environmental statutes passed many years later is without merit.

Appellants further argue Exxon violated rule 39 of a Railroad Commission order, which violation constituted negligence per se. Rule 39 provided, in pertinent part:

(7) Open earthen storage for merchantable oil is hereafter prohibited, except when the Commission grants special permission order to meet an unforeseen emergency. Where such storage is now in use, it must be discontinued within a reasonable time.

The rule was adopted May 1, 1920; Exxon bought the land in 1921. Appellants cite no authority to support their argument that they were a member of the class of injured persons protected by this rule 39. Exxon alleged in its motion for summary judgment that rule 39 was enacted for the prevention of waste and/or conservation of oil and gas, and not for protection of human health. We are limited in our review of this point to the ground presented to the trial court in Exxon's motion for summary judgment. *McConnell v. Southside School District*, 858 S.W.2d 337, 343 (Tex.1993).

The tort concept of negligence per se is expressed in the RESTATEMENT (SECOND) OF TORTS § 288B (1965), as follows:

(1) The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself.

The rule has been adopted by the Supreme Court. *Southern Pacific Company v. Castro*, 493 S.W.2d 491, 497 (Tex.1973). However, we have not been cited to any authority, and have found none, which expressly adopts or rejects rule 39 as defining the standard of conduct of a reasonable person.

The rules of construction which apply to statutes apply with equal force to administrative rules and regulations. *Texarkana & Ft. S. Ry. Co. v. Houston Gas & Fuel Co.*, 121 Tex. 594, 51 S.W.2d 284, 287 (1932). The mere fact that an administrative agency promulgates a rule or regulation does not require the courts to accept it as a standard for civil liability. *Carter v. William*

*Sommerville and Son, Inc.,* 584 S.W.2d 274, 278 (Tex.1979). The power of adopting or rejecting a standard of conduct rests with the civil courts. *Rudes v. Gottschalk,* 159 Tex. 552, 324 S.W.2d 201, 205 (1959). Therefore, the concept of negligence per se becomes viable in the cause only if the courts adopt rule 39 as defining the standard of conduct of a reasonably prudent person. *Moughon v. Wolf,* 576 S.W.2d 603, 604 (Tex.1978).

■ The courts will not adopt an administrative rule or regulation as a standard for negligence unless a purpose of the rule is to afford protection to the class of persons to which the injured party belongs against the hazard involved in the particular case. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 549 (Tex.1985). Thus, we must ascertain the intent of the Railroad Commission in its promulgation of rule 39. The intention should be ascertained from the entire document and not from isolated portions thereof. *Merchants Fast Motor Lines v. Railroad Com'n,* 573 S.W.2d 502, 505 (Tex.1978).

Rule 39 was passed pursuant to Oil and Gas Conservation Laws Act of March 31, 1919, 36 th Leg., R. S., ch. 155, art. 1, 1919 Tex. Gen. Laws. The Railroad Commission issued its "Conservation Rules and Regulations" on July 26, 1919, defining "waste" and setting out rules for preventing waste and conservation of oil and gas. Rule 1, provided: "Natural gas and crude oil or petroleum shall not be produced in the State of Texas in such manner and under such conditions as to constitute waste." Rule 4 stated, in part: "all operators ... shall use every possible precaution in accordance with the most approved methods to stop and prevent waste of oil and gas ... in storage...." Rule 39 listed thirteen specific restrictions on the use of oil tanks on producing leases or farms, along with various safety regulations. The restriction on open earthen storage tanks was numbered (7). The prohibition against the use of open pits or earthen storage is now found in TEX. NAT. RES.CODE ANN. § 85.046 (Vernon 1993), which provides:

(a) The term " waste," among other things, specifically includes:

\*　　\*　　\*　　\*　　\*　　\*

(8) surface waste or surface loss, including the temporary or permanent storage of oil or the placing of any product of oil in open pits or earthen storage, and other forms of surface waste or surface loss including unnecessary or excessive surface losses, or destruction without beneficial use, either of oil or gas;

■ Article 7 of the enabling legislation (Act of March 31, 1919, S.B. 350, 36th Leg.) provided that a violation of any of the regulations of the Railroad Commission "shall be subject to a penalty of not more than five thousand ($5,000.00) dollars, to be recovered in any court of competent jurisdiction...." The supreme court found that article 6036, of Vernon's Annotated Civil Statutes (Vernon 1925) (the penalty provision as codified in 1925) was a civil penalty statute enacted for the primary purpose of promoting and encouraging law enforcement and deterring violations of the rules, regulations and orders of the Railroad Commission. *State v. Harrington,* 407 S.W.2d 467, 474 (Tex.1966), *cert. denied,* 386 U.S. 944, 87 S.Ct. 977, 17 L.Ed.2d 874 (1967). The *Harrington* court analyzed Rule 37, a well spacing rule, and "recognized that the basic purpose of the rule was the prevention of waste or confiscation." Rules 39 and 40 were adopted by the Railroad Commission on May 1, 1920. Rule 39 did not completely prohibit the use earthen storage tanks because it also provided the Commission could grant special permission to use the storage tanks "to meet an unforeseen emergency." None of the rules provide for the fixing of civil liability in a civil action, such as this case, for failure to comply with Rule 39. There are no Texas cases where Rule 39 was used to establish civil liability. We find Rule 39 had prevention of waste and conservation of oil as its purpose. We hold that a failure to comply with the provisions of Rule 39 (now TEX. NAT. RES.CODE ANN. § 85.046 (Vernon 1993)) does not constitute negligence per se. *See Continental Oil Co. v. Simpson,* 604 S.W.2d 530, 534–36 (Tex.Civ. App.—Amarillo 1980, writ ref'd n.r.e.). The trial court did not abuse its discretion granting Exxon summary judgment on this ground.

3. The nuisance claim. Appellants contend that Exxon created a nuisance on the land and are liable to appellants. One of the grounds for Exxon's summary judgment contended the nuisance theory did not apply to this situation because appellants owned the land upon which the nuisance was created, and nuisance is a cause of action available for an invasion of the land of another. We agree with Exxon.

▇ Nuisance has been defined in Texas jurisprudence as "a condition which substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Watson v. Brazos Elec. Power Co-op., Inc.,* 918 S.W.2d 639, 644 (Tex.App.—Waco 1996, writ denied). Generally, for an actionable nuisance to arise, a defendant must engage in one of three types of conduct: (1) intentional invasion of *another's* interests; (2) negligent invasion of *another's* interests; or (3) other conduct, culpable because abnormal and out of place in its surroundings, that invades *another's* interests. *Id.*

Exxon cites *Jones v. Texaco, Inc.,* 945 F.Supp. 1037, 1051 (S.D.Tex.1996), as analogous to the facts in this case, and as authority for its contention that the nuisance doctrine is not applicable under Texas law. *Jones* was a suit against the vendors by purchasers of land in Texas for claims arising out of *contamination* of land by the vendors before sale of land. In *Jones,* the federal district court held that strict liability claims are imposed on one engaging in an abnormally dangerous activity "for harm to the person, land, or chattels *of another*" in those jurisdictions that recognize the strict-liability doctrine. *Id.* at 1051. Thus, the doctrine of strict liability, like the nuisance doctrine, concerns damage by one landowner's activities *only* to the lands of *another.*

In *Jones,* Texaco had disposed of oil sediment and other wastes in earthen pits on the land at the time it owned the property. *Id.*

at 1039. When the plaintiffs purchased the property, a layer of topsoil, asphalt, and, in some cases, structures concealed the earthen pits where the materials were deposited. *Id.* Eventually, the wastes began to seep out of the ground and became apparent on the surface. The plaintiffs engaged an environmental engineering firm to investigate, and that firm reported the land was contaminated. *Id.* The plaintiffs sued for damages alleging negligence, gross negligence, and strict liability.[2]

▇ The *Jones* court found that, even if Texas recognized the doctrine, strict liability claims apply only to damage to lands of another, and Texaco was not responsible for harming land it owned at the time it engaged in the offensive activity. *Id.* at 1051–52. By the same reasoning, we find that appellants have no claim for nuisance against Exxon, because Exxon did not damage the lands of another. If Exxon caused harm to the property, "it was to land it owned, not to the 'land of another.'" *Id.* at 1051. Exxon's summary judgment proof negated appellants' claim for nuisance.

4. Strict liability. Appellants contend Exxon was strictly liable under section 402A of the Restatement because the oil residue in the pits ultimately contaminated the land and the water which caused injury. Section 402A provides, in pertinent part:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Exxon contends that section 402A applies to sales of chattels, and this case involves a sale of land. Exxon argues that the earthen pits containing oil residue were part of the

---

2. The *Jones* court found that Texas did not adhere to the strict liability doctrine set out in §§ 519 and 520, of the Restatement, citing *Turner v. Big Lake Oil Co.,* 128 Tex. 155, 96 S.W.2d 221, 222, 226 (1936), and other cases. *Id.* at

1050. The court further found that strict liability claims apply to damage to "land of another." *Id.* at 1051. Thus, the plaintiff's claims did not fall "within the parameters of § 519 of the Restatement." *Id.* at 1051.

land sold to Hicks. Appellants contend the oil that was stored in the earthen pits was a "product" sold to consumers, and was "inherently and unreasonably dangerous and toxic," and caused injury to appellants. Appellants furnished no summary judgment evidence, and cite no authority, to negate Exxon's contention in its motion for summary judgment that section 402A does not apply to this case.

■ Rule 74(f) (now 38.1(h)) requires citations to authorities to support a party's contentions. When an appellant raises a point of error on appeal, but fails to cite to any authority, this failure "constitutes a waiver of the alleged error." *Raitano v. Texas Department of Public Safety,* 860 S.W.2d 549, 554 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Olson v. Central Power and Light Co.,* 803 S.W.2d 808, 813 (Tex.App.—Corpus Christi 1991, writ denied). Although we construe the rules of appellate procedure liberally, "a point of error unsupported by the citation of authority presents nothing for this court to review." *Raitano,* 860 S.W.2d at 554. Appellant's claim with regard to strict liability under a products liability theory is waived.

Appellants next assert that Exxon was strictly liable under sections 519–520 of the Restatement. These sections provide:

§ 519. General Principle.

(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land, or chattel of *another* resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

§ 520. Abnormally Dangerous Activities.

(a) existence of a high degree of risk of some harm to the person, land or chattels *of others;*

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes (emphasis added).

RESTATEMENT (SECOND) OF TORTS. §§ 519 & 520.

■ Texas has not adopted sections 519 and 520 of the Restatement, and our courts have rejected the doctrine of abnormally dangerous activities as a basis for strict liability. In the absence of some other showing, such as negligence, there is no basis for recovery. *Barras v. Monsanto Co.,* 831 S.W.2d 859, 865 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

Even if Texas recognized the doctrine of abnormally dangerous activities as a basis for strict liability, section 519 claims apply *only* to claims to the person, land, or chattel of *another.* *Jones,* 945 F.Supp. at 1051. If Exxon caused harm to the property, it was to land it owned, not to the "land of another." *Id.* Appellants strict liability claims have no merit, are not actionable, and Exxon's summary judgment proof negates this claim.

## III. CONCLUSION.

On the grounds discussed above, we uphold the summary judgment on the claims actually before us. Appellants' negligence claim fails as a matter of law because Exxon owed no duty to appellants. Appellants' claims of negligence per se, nuisance, and strict liability have likewise been negated by Exxon as a matter of law. Appellants have waived their claim of products liability for failure to cite authority in support of their contention. Thus, we need not decide whether the appellee's limitations defenses were meritorious. *See Maranatha Temple v. Enterprise Products,* 893 S.W.2d 92, 106 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Appellants' points of error one, two, and three are overruled and the judgment of the trial court is affirmed.