In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00085-CV


______________________________




MARTHA LAGRONE AND THOMAS WOOTEN, Appellants



V.



SENDERO ENERGY, INC., Appellee




 


On Appeal from the 123rd Judicial District Court


Panola County, Texas


Trial Court No. 2005-328




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Martha LaGrone and Thomas Wooten (collectively, LaGrone) (1) are the owners of the surface
estate of real property and Sendero Energy, Inc. (Sendero) is the operator of a gas well on the
LaGrone property pursuant to an existing oil and gas lease. LaGrone brought suit against Sendero
for damages to the surface estate. Only two questions were presented to the jury: (1) whether
Sendero had been negligent and (2) if Sendero was negligent, the amount of damages which had
been sustained. The jury returned a broad-form answer that Sendero was not negligent and,
therefore, the jury did not answer the second question. LaGrone appeals, asserting one issue: that
the court abused its discretion in not submitting to the jury LaGrone's requested instruction
concerning a statutory duty. (2) Because LaGrone fails to show how the particular Texas Railroad
Commission regulation proposed to be given as an instruction to the jury was raised by the pleadings
or the evidence so as to entitle LaGrone to submission of that jury instruction under Tex. R. Civ. P.
278, we affirm.

I. STANDARD OF REVIEW

 We review a trial court's decision not to submit a particular instruction under an abuse of
discretion review. Shupe v. Lingafelter, 192 S.W.3d 577, 579 (Tex. 2006); In re V.L.K., 24 S.W.3d
338, 341 (Tex. 2000). The trial court has considerable discretion to determine necessary and proper
jury instructions. V.L.K., 24 S.W.3d at 341. If an instruction might aid the jury in answering the
issues presented to it or if there is any support in the evidence for an instruction, the instruction is
proper. See Louisiana-Pac. Corp. v. Knighten, 976 S.W.2d 674, 676 (Tex. 1998); Reinhart v.
Young, 906 S.W.2d 471, 472 (Tex. 1995); La. & Ark. Ry. Co. v. Blakely, 773 S.W.2d 595, 598 (Tex.
App.--Texarkana 1989, writ denied). 

 A party is entitled to a jury question, instruction, or definition if the issue is raised by the
pleadings and the evidence. Tex. R. Civ. P. 278. "When a trial court refuses to submit a requested
instruction on an issue raised by the pleadings and evidence, the question on appeal is whether the
request was reasonably necessary to enable the jury to render a proper verdict." Shupe, 192 S.W.3d
at 579. If we determine that an error exists, we then consider the pleadings, the evidence presented
at trial, and the charge in its entirety in determining whether the error merits reversal. Island
Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n, 710 S.W.2d 551, 555 (Tex. 1986). Error in
the charge to the jury is cause for reversal only if it is harmful error; in other words, if the error
caused or was reasonably calculated to cause, and probably did cause, the rendition of an improper
judgment, then the judgment should be reversed. Tex. R. App. P. 44.1(a)(1); Island Recreational
Dev. Corp., 710 S.W.2d at 555.

II. ENTITLEMENT TO PROPOSED INSTRUCTION

 A. The Proposed Instruction

 The instruction (Instruction 13) which was requested by LaGrone, the submission of which
was denied by the trial court, stated:

 YOU ARE INSTRUCTED THAT THE TEXAS RAILROAD COMMISSION
RULES DEFINE A RESERVE PIT AS . . . .


 YOU ARE FURTHER INSTRUCTED THAT THE TEXAS RAILROAD
COMMISSION RULES DEFINE A FRESH MAKEUP WATER PIT AS . . . .

 

 YOU ARE FURTHER INSTRUCTED THAT SAID RULES REQUIRE THAT
RESERVE PITS AND MUD CIRCULATION PITS WHICH CONTAIN FLUIDS
WITH A CHLORIDE CONCENTRATION OF 6,100 MG/LITER OR LESS AND
FRESH MAKEUP WATER PITS SHALL BE DEWATERED, BACKFILLED,
AND COMPACTED WITHIN ONE YEAR OF CESSATION OF DRILLING
OPERATIONS.


 YOU ARE FURTHER INSTRUCTED THAT RESERVE PITS AND MUD
CIRCULATION PITS WITH A CHLORIDE CONCENTRATION IN EXCESS OF
6,100 MG/LITER SHALL BE DEWATERED WITHIN 30 DAYS AND
BACKFILLED AND COMPACTED WITHIN ONE YEAR OF CESSATION OF
DRILLING OPERATIONS.


This proposed instruction generally tracks parts of the Texas Railroad Commission's Oil and Gas
Division's regulations for water protection in Rule 3.8. See 16 Tex. Admin. Code § 3.8(a)(9),
(a)(12), (d)(4)(G)(i)(I), (d)(4)(G)(i)(II). The court denied the instruction during an off-the-record
charge conference, though the parties lodged their objections on the record. The final charge
included definitions for "Negligence," "Ordinary care," and "Proximate cause," and a broad-form
negligence question following the Texas Pattern Jury Charges. See Comm. on Pattern Jury Charges,
State Bar of Tex., Texas Pattern Jury Charges: General Negligence and Intentional Personal Torts
PJC 2.1, 2.4, 4.1 (2006).

 B. Raised by the written pleadings and the evidence

 1. Raised by the written pleadings?

 LaGrone originally pleaded three theories of recovery against Sendero for damages incurred
to the surface of the lands: nuisance, trespass, and negligence. (3) Although LaGrone pleaded
negligence, there was no pleading of negligence per se. LaGrone nonetheless asserts on appeal that
the pleading of general negligence in the original petition--which mentioned neither pits (4) nor a
statutory or regulatory duty--"would encompass" the proposed instruction on the regulatory duty. 

 In addition to not having specifically pleaded negligence per se, LaGrone did not specify the
proposed regulatory duty as a measure of ordinary care in its pleadings. When LaGrone first
specifically identified the alleged duty owed by Sendero (in LaGrone's response to Sendero's
amended motion for summary judgment), LaGrone did not raise a statutory or regulatory duty as an
issue in controversy: 

 Defendant owed a duty to the Landowners, arising in two ways: (a) as a member of
the public, not to intrude onto the Landowner's Property; and (b) not to exceed the
scope of permissible use of the Property under that Lease . . . . 


Our review of the pretrial pleadings in the record indicates that LaGrone made no further mention
of pits, duties specific to pits, or statutes, rules, or regulations imposing duties.

 2. Raised by the oral pleadings and argument? 

 Even if the issue was not raised by the written pleadings, when issues not raised by the
pleadings are tried by express or implied consent of the parties, they shall be treated in all respects
as if they had been raised in the pleadings. Tex. R. Civ. P. 67. LaGrone asserts that the issue of the
regulatory duty was a major focus of the trial. Our review of the record indicates that no specific
Railroad Commission regulation was mentioned over the course of the trial, although references to
the Railroad Commission and its rules were made in general terms. 

 During voir dire, LaGrone told the jury panel about the "law that governs" what Sendero was
permitted to do and what it was prohibited from doing under, specifically, the lease and "just the law,
common law of the State of Texas or certain codes." At trial, LaGrone asserted in its opening
statement that the court would likely instruct the jury that negligence is "the failure to use ordinary
care, failing to do that which a person of ordinary prudence would have done under the same or
similar circumstance or doing that which a person of ordinary prudence would not have done under
the same or similar circumstance." Later in opening statements, LaGrone told the jury that the court
may instruct it that "failure to abide by a custom of the industry can be negligence." LaGrone also
told the jury that

 the rules require that those pits be closed at a certain time. Listen to the testimony
about as when [sic] this pit got closed. And if they really want to talk about other
operators in the area and compare themselves to it, see how long the other operators
took to close any of their pits. Because it all goes back to using more of the land than
is reasonably necessary. 


 Despite LaGrone's various previews to the jury regarding what LaGrone believed to be the
standard of care, LaGrone neither told the jury that the evidence would show that the violation of a
statute or regulation by Sendero would provide the standard of care nor told the jury that the court
might give instructions that such a violation would provide that standard. 

 3. Raised by the evidence?

 Testimony at trial lasted one and a half days. According to the testimony of Garth, Martha's
husband (Garth was the manager of their property), the Sendero well was drilled in the "latter part
of September-October of '03." David Porter, Sendero's co-owner, testified that drilling was complete
in November 2003. Both Garth and Bruce Rampy, Sendero's field operations foreman, testified that
the pit was not closed until the end of August 2005, almost two years after drilling was complete. 

 When given an opportunity to expound on the regulation of the pits, Garth gave this
testimony:

 Q. [by LaGrone's counsel] Well, you've been in the drilling business
before. Aren't the pits supposed to be closed within a certain time?


 A. [by Garth] I would think less than a year and a half to two years, yes,
sir.


 Q. There might be a state wide rule on that, reckon?


 A. Might be. Should be, anyway.


LaGrone was slightly more specific when cross-examining Porter. Porter stated that in closing a pit,
"first you have to take the water out. The Railroad Commission allows you to take -- as long as its
[sic] fresh water of a certain quality, they allow that water to be taken out and pumped out onto a
land like a land farming." LaGrone then asked:

 Q. [by LaGrone's counsel] Okay. Good. So water is out of the pit. Did
you see there was a Railroad Commission rule?


 A. [by Porter] As I understand the Railroad Commission regulations,
they want the water out of the pit.


 Q. Before closing?


 A. Correct.


 Q. So springtime rain is really not a problem, is it?


 A. It is if you're trying to take water out and it's coming in just as fast as
you're taking it out.


Porter was then asked if Sendero did "ever make an application to the Railroad Commission to keep
the reserve pit open," to which Porter replied that Sendero had not. Porter explained Sendero's
fence-line policy (i.e., a policy regarding the surface owners' access to areas inside Sendero's fence,
an area which would include the pit) as follows:

 Our policy is that inside the fence, we're responsible. If something happens or we get
in trouble with the Railroad Commission or with somebody else, they're going to
look to us for what goes on inside that fence. . . . we're going to be the one that's held
responsible by the Railroad Commission.


Our review of the record indicates no other testimony potentially supporting submission of the
proposed instruction.

 C. Analysis

 A "party seeking to recover on the ground of negligence per se must plead a statutory
violation." Daugherty v. S. Pac. Transp. Co., 772 S.W.2d 81, 83 (Tex. 1989). It is undisputed that
LaGrone did not expressly plead a statutory or regulatory violation. LaGrone contends that it is
entitled to the proposed instruction merely in support of the general negligence cause of action which
it pled as a statement of the relevant law of duty applicable to the case. Although LaGrone presents
no authority in support of this position, we are cognizant of two cases that have addressed the issue. 
Compare Hirsch v. Thames, No. 01-92-00703-CV, 1993 Tex. App. LEXIS 1362 (Tex.
App.--Houston [1st Dist.] May 13, 1993, writ denied) (not designated for publication) (not entitled
to statutory standard of care instruction without pleading negligence per se), and Waldon v. City of
Longview, 855 S.W.2d 875, 877 (Tex. App.--Tyler 1993, no writ) (instruction on statutory standard
of care acceptable despite not having pleaded negligence per se, since jury was not instructed that
a violation of the statute equated with negligence). 

 We are persuaded that an instruction on the regulatory standard of care must be supported
by pleadings giving notice of the proposed use of that regulation. To support submission of a jury
question, the pleadings must give the opposing party fair and adequate notice of the facts under
which the pleader relies so that the opposing party has sufficient notice and information to prepare
his defense. Murray v. O & A Express, Inc., 630 S.W.2d 633, 636 (Tex. 1982). When a plaintiff
claims a statutory violation, the 

 defendant in such a suit must frame his defense in terms of the recognized excuses
for violation of a statute. Since these excuses must be affirmatively raised by the
evidence, it is important that the party alleged to be negligent as a matter of law be
informed prior to trial that the opposing party relies upon the statutory violation. 
Thus, a party relying upon a statutory violation should plead this reliance if he is to
recover on that basis.


Id. (footnote omitted); see also Lively v. Carpet Servs., Inc., 904 S.W.2d 868, 873 n.7 (Tex.
App.--Houston [1st Dist.] 1995, writ denied). 

 We find that LaGrone did not specify reliance on the proposed regulation as a basis for
recovery in the pleadings or the evidence. LaGrone's questions to Garth concerning whether the pits
were "supposed to be closed within a certain time" and whether "a state wide rule on that" existed
were answered only equivocally and without reference to any particular governing rule. LaGrone's
question to Porter regarding whether, once water is out of the pit, "there was a Railroad Commission
rule" did not reference a particular rule, or even the particular part of the rule on which it later sought
to rely. Although LaGrone asserted in its opening statement that "the rules require that those pits
be closed at a certain time," LaGrone proceeded to explain this from the perspective of industry
practices and reasonable use. A statute which provides a standard of ordinary care is inappropriately
instructed. See Freudiger v. Keller, 104 S.W.3d 294, 297 (Tex. App.--Texarkana 2003, pet.
denied). The effect of all of these references in the pleadings and the evidence is to demonstrate that
LaGrone never raised the particular regulation with sufficient specificity to provide Sendero notice
that it must defend against an allegation that there had been a violation of that regulation. 

 Compounding the problem of insufficient notice to Sendero supplied only by vague
references to "rules" is that Rule 3.8, in its entirety, discusses and defines sixteen different types of
pits associated with the drilling and production from an oil or gas well. See 16 Tex. Admin. Code
§ 3.8(a)(1-16). The part of Rule 3.8 that LaGrone proposed to include within the instructions
discusses only three of these pits (reserve pits, mud circulation pits, and fresh makeup water pits)
although not even all of these kinds of pits were the subject of evidence at trial. Moreover, pits
actually discussed at trial were not included in the proposed instruction. (5) "An instruction is proper
only if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and
evidence." Perez v. Lopez, 74 S.W.3d 60, 67 (Tex. App.--El Paso 2002, no pet.).

 Additionally, we note that even had LaGrone pleaded the regulatory duty, LaGrone must still
have presented evidence which connected a breach of the regulatory duty to the damages which had
been claimed. The damages for which LaGrone sought recovery--an ugly, unseeded, eroding
surface--must be included among the damages intended to be prevented by the statute. "The
threshold questions in every negligence per se case are whether the plaintiff belongs to the class that
the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was
designed to prevent." Perry v. S.N., 973 S.W.2d 301, 305 (Tex. 1998). (6)

 Martha wanted the pits re-seeded. At trial, LaGrone claimed the pit needed to be graded and
seeded. Garth testified that when it is filled in, the pit should be immediately seeded with grass and
that Sendero had taken no such steps. Martha testified that the real problem with the mud pit is that
despite its having been filled in already, it "needs to be put back like it was with grass and
everything." Unfortunately, grading and seeding are not the standard provided in the regulation; (7)
since the regulation is focused on water purity for the State of Texas, it has no provision for grading
or seeding the surface for the benefit of the surface estate owner. LaGrone fails to show how its
injury--a poorly graded and bare surface--is of the type that the requirements contained in Rule 3.8
were designed to prevent. See Tex. Nat. Res. Code Ann. § 91.101 ("To prevent pollution of
surface water or subsurface water in the state, the commission shall adopt and enforce rules . . . ."). 

 Finally, we note that even if the issue had been tried by consent and that had the injury
alleged to have been sustained was the type intended to be prevented, LaGrone failed to show how
a breach of the regulatory duty to de-water, backfill, and compact the pit within the year mandated
by Rule 3.8 proximately caused the damages claimed. The evidence indicates that Sendero did
eventually fill the pit (albeit that it apparently was done in a manner which left an unsightly scar on
the lands upon which it was once located); however, the evidence does not specify any damage
proximately caused by the extra-regulatory delay in filling the pit. The closest evidence is that from
Thomas, who implies that erosion on the property was related to a negligent filling of the pit. But
we are cognizant that negligence in delaying the fill (a topic which was never discussed at all except
in the acknowledgment by Sendero as to the time frame between completion of the drilling
operations and the eventual filling of the pit) is different from negligence in executing the fill. 

III. CONCLUSION

 In sum, LaGrone did not raise the particular regulatory duty sought to be instructed in the
pleadings or the evidence. The trial court did not abuse its discretion in refusing to instruct the jury
on that duty. The point of error is overruled.

 We affirm the judgment.



 Bailey C. Moseley

 Justice


Date Submitted: July 18, 2007

Date Decided: August 17, 2007


1. The Appellants' first names (Martha or Thomas) will be used when the reference is to the
individual.
2. Though LaGrone phrases the issue as one of a statutory duty, it is, more accurately, a
regulatory duty having the force of law. The instruction LaGrone sought stems from a Texas
Railroad Commission rule. See 16 Tex. Admin. Code § 3.8 (Tex. R.R. Comm'n, Water Protection),
available at http://info.sos.state.tx.us/pls/pub/readtac$ext.viewtac. The Texas Natural Resource
Code provides for the Railroad Commission to "adopt and enforce rules and orders." Tex. Nat. Res.
Code Ann. § 91.101 (Vernon Supp. 2006). Nonetheless, the rules established by the Railroad
Commission have the force of law. See R.R. Comm'n v. WBD Oil & Gas Co., 104 S.W.3d 69, 75
(Tex. 2003); L & G Oil Co. v. R.R. Comm'n, 368 S.W.2d 187, 193 (Tex. 1963) ("Rules and orders
of the Railroad Commission made under authority of a statute are considered under the same
principles as if they were the acts of the Legislature . . . ."). 
3. Only the negligence theory was presented to the jury. 
4. LaGrone did mention pits in its responses to Sendero's motion and amended motion for
summary judgment, though in the context of its nuisance cause of action and making no mention of
a particular statutory or regulatory duty. LaGrone's response to Sendero's motion for summary
judgment stated: "The nuisance here arises . . . by creating and leaving uncovered an open pit for
a long period of time." LaGrone asserted that "[o]nly after this suit was filed was the pit covered and
any cleanup attempt made." LaGrone's response to Sendero's amended motion for summary
judgment again asserted that Sendero left a "large pit uncovered."
5. The proposed instruction focuses on mud pits, also known as reserve pits. See 16 Tex.
Admin. Code § 3.8(a)(12). But the evidence shows there were several types of pits on the LaGrone
property. Garth testified to a blowdown pit and mud pit. See 16 Tex. Admin. Code § 3.8(a)(7), (12). 
Martha testified that she was primarily concerned with the mud pit. The contractor who testified as
to the cost of repair stated that there was "some type of maybe a berm pit or something in that sort." 
(Emphasis added.) Porter testified that the site had a "flow back pit or flare pit." (Emphasis added.) 
See 16 Tex. Admin. Code § 3.8(a)(8). Sendero's field manager testified to a return pit, a flare pit,
and a working pit. 
6. Sendero, citing Hicks v. Humble Oil and Refining Co., 970 S.W.2d 90 (Tex. App.--Houston
[14th Dist.] 1998, pet. denied), asserted at oral argument that Rule 3.8 could not provide the standard
of care because surface owners are not, for any purposes, among the class intended to be protected
by Railroad Commission regulations. Sendero grossly misstated the Hicks holding and applicability
to this case. See id. at 95; see also Mieth v. Ranchquest, Inc., 177 S.W.3d 296, 305 (Tex.
App.--Houston [1st Dist.] 2005, no pet.) ("Rule 8 [3.8] clearly affords protection to the class of
persons to which appellants belong, i.e., surface owners, against the hazard involved, i.e., pollution
of surface and subsurface water."). 
7. Also, it should be noted that the oil and gas lessee's estate is the dominant estate and the
lessee has an implied grant, absent an express provision for payment, of free use of such part and so
much of the premises as is reasonably necessary to effectuate the purposes of the lease, having due
regard for the rights of the owner of the surface estate. Humble Oil & Ref. Co. v. Williams, 420
S.W.2d 133 (Tex. 1967); Brown v. Lundell, 162 Tex. 84, 344 S.W.2d 863 (1961); Warren Petroleum
Corp. v. Monzingo, 157 Tex. 479, 304 S.W.2d 362 (1957); Warren Petroleum Corp. v. Martin, 153
Tex. 465, 271 S.W.2d 410 (1954). The rights implied from the grant are implied by law in all
conveyances of the mineral estate and, absent an express limitation thereon, are not to be altered by
evidence that the parties to a particular instrument of conveyance did not intend the legal
consequences of the grant. Sun Oil Co. v. Whitaker, 483 S.W.2d 808, 811 (Tex. 1972). The oil and
gas lease under which Sendero was operating provided for the payment of surface damages only as
such damages would be inflicted on crops and growing timber.