



# MEMORANDUM OPINION

No. 04-10-00665-CV

Ramona **IBARRA**, Marcos Ibarra, and Maribel L. Rodriguez,
Appellants

v.

The City of **LAREDO**,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2004-CVF-001677-D2
Honorable Raul Vasquez, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:          Karen Angelini, Justice
                  Phylis J. Speedlin, Justice
                  Rebecca Simmons, Justice

Delivered and Filed:  July 18, 2012

AFFIRMED

Appellants Ramona Ibarra, Marcos Ibarra, and Maribel Rodriguez ("the Ibarras") sued the City of Laredo ("the City") for breach of contract and nuisance. The trial court directed verdict against the Ibarras on their nuisance claim. A jury found no breach of contract occurred. The trial court rendered judgment that the Ibarras take nothing. We affirm.

**BACKGROUND**

Ramona Ibarra owns and occupies a house located in Laredo, Texas. Ramona's two adult children, Marcos Ibarra and Maribel Rodriguez, live in the house with her. The City of Laredo Water Utilities Department provides water services to the area where Ramona's house is located. With a few exceptions, the Ibarras have lived in the house continuously for about thirty years.

When Ramona and her husband purchased the house in 1980, they opened an account for water services and the City provided them water services. When Ramona and her husband divorced in 1992, Ramona was awarded the Laredo house. Notwithstanding the divorce, both Ramona and her ex-husband continued to live in the house. A friend of Ramona's ex-husband, Miguel Flores, also resided in the house. When Ramona and her ex-husband failed to make payments on their account, water services were disconnected for nonpayment.

In 1998, Flores opened an account for water services at the house. When Flores applied for water services, he and the City entered into an agreement for Flores to pay the unpaid balance on the previous water services account for the house. Flores agreed in writing to make thirty-six monthly payments of about $300.00 each toward the unpaid account balance of $10,928.34. Flores and Ramona's ex-husband eventually moved out of the house.

On February 2, 2000, Ramona's daughter, Maribel, applied for and obtained water services at the house. When Maribel applied for water services, she and the City entered into an agreement requiring Maribel to pay the unpaid balances on the prior water services accounts for the house. Maribel agreed in writing to make eighteen monthly payments of $150.00 each toward the unpaid account balances which totaled $2,692.00. On December 22, 2000, the Ibarras received a letter from the City advising them that their property had a large unpaid balance for water services, and that their water services would be disconnected immediately after the

holidays. On August 16, 2001, Maribel and the City entered into a second written agreement in which Maribel agreed to make monthly payments of $200.00 each toward the unpaid account balances which totaled $5,033.72. This agreement stated, "Failure to pay the full amount billed each month, consisting of the current bill plus the agreed monthly amount to liquidate the prior debt, shall result in disconnection of services…" When Maribel failed to make monthly payments as promised in the second agreement, the City disconnected water services for the house. The City refused to reconnect water services unless and until all past due balances were paid.

The Ibarras brought claims against the City for breach of contract and nuisance. The case was tried to a jury. At trial, the Ibarras presented testimony from Ramona, Marcos, and Maribel. The Ibarras also presented testimony from several other witnesses, including a neighbor who allowed the Ibarras to use her water. The City moved for directed verdict on both claims. The trial court granted the motion for directed verdict on the nuisance claim and submitted the breach of contract claim to the jury. The jury found no breach of contract, and the trial court rendered judgment that the Ibarras take nothing. The Ibarras appealed.

**JURY CHARGE**

In their first issue, the Ibarras raise two complaints related to question number one of the jury charge. Question number one stated:

> Do you find from a preponderance of the evidence that the City of Laredo breached its contract for water services with Ramona Ibarra, Marcos Ibarra and Maribel I. Rodriguez?

First, the Ibarras complain the trial court erred by submitting this question to the jury because it involved a question of law for the court rather than a question of fact for the jury. Second, the Ibarras complain the trial court erred by not including an instruction with question one. The

instruction advised the jury that one way for a breach of contract to occur was for one party to make the other party's performance impossible.

### 1. *Waiver*

The City argues the Ibarras waived their jury charge complaints because they failed to timely and specifically raise their complaints in the trial court. In order to preserve error for appellate review, a party must timely object to the jury charge, plainly make the trial court aware of the nature of the complaint, and obtain a ruling. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43 (Tex. 2007); *see also Cruz v. Andrews Restoration*, *Inc.*, 364 S.W.3d 817, 829-31 (Tex. 2012). Texas Rule of Civil Procedure 274 provides, "A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection." TEX. R. CIV. P. 274. Failure to object before the charge is read to the jury waives the complaint. *Mo. Pac. R.R. Co. v. Cross*, 501 S.W.2d 868, 873 (Tex. 1973).

Here, the record shows the Ibarras never made the trial court aware of their first jury charge complaint. The record contains no objection to question one on the ground that it presented a question of law for the court rather than a question of fact for the jury. In the absence of an objection, we conclude the Ibarras have waived their complaint that the trial court erred by submitting question one to the jury because it involved a question of law for the court rather than a question of fact for the jury.

On the other hand, the record shows the Ibarras made the trial court aware of their second jury charge complaint. During the informal charge conference, the Ibarras requested an instruction on breach of contract and impossibility of performance. In making this request the Ibarras referred to a written proposed jury charge, which contained the following instruction: "The law provides that a defendant breaches a contract by making the plaintiff's performance

impossible."[1] The trial court advised the Ibarras it would not use their instruction. Thus, the record shows the Ibarras made the trial court aware of their proposed instruction at the informal charge conference, and obtained a ruling on their request. The City suggests the Ibarras waived this complaint by stating they had no objection to question one at the formal charge conference. *See Wackenhut Corp. v. Gutierrez*, 358 S.W.3d 722, 725 (Tex. App.—San Antonio 2011, no pet.) (holding charge complaint was waived when the complaining party affirmatively stated it had no objection at the charge conference and made no objection until after the charge was read to the jury). We disagree. Unlike the complaining party in *Wackenhut Corp.*, the Ibarras timely and plainly made the trial court aware of the nature of their complaint, and obtained a ruling. We conclude the Ibarras have not waived their second jury charge complaint. We therefore consider the merits of this complaint.

2. *Merits*

We review the trial court's decision to submit or refuse a particular instruction for an abuse of discretion. *Thota v. Young*, No. 09-0079, 2012 WL 1649163, at *7 (Tex. 2012). The trial court has considerable discretion to determine proper jury instructions. *Id*. An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and the evidence. *Id*.

There are two categories of impossibility: objective and subjective. *Johnson v. Johnson*, No. 02-10-00296-CV, 2011 WL 3426223, at *2 (Tex. App.—Fort Worth 2011, no pet.); *Janak v. FDIC*, 586 S.W.2d 902, 906-07 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ). Objective impossibility involves something that cannot be done, such as a promisor's inability to settle a claim by entering an agreed judgment in a lawsuit that was dismissed prior to the completion of

_____

[1]The Ibarras' proposed jury charge was not included in the clerk's record; however, it was included in the appendix to their brief.

the agreement. *Johnson*, 2011 WL 3426223, at *2; *Janak*, 586 S.W.2d at 906-07. Subjective impossibility involves something the promisor cannot do, such as when a promisor's financial inability to pay makes it impossible for the promisor to perform. *Johnson*, 2011 WL 3426223, at *2; *Janak*, 586 S.W.2d at 906-07. While objective impossibility can serve as a defense to a breach of contract suit, a party cannot escape contract liability by claiming subjective impossibility. *Johnson*, 2011 WL 3426223, at *3; *Janak*, 586 S.W.2d at 906-07. Subjective impossibility neither prevents the formation of the contract nor discharges a duty created by a contract. *Johnson*, 2011 WL 3426223, at *3; *Janak*, 586 S.W.2d at 906-07.

The main case relied by the Ibarras is *S.K.Y. Inv. Corp. v. H.E. Butt Grocery Co.*, 440 S.W.2d 885, 889 (Tex. Civ. App.—Corpus Christi 1969, no writ). There, the appellate court stated and applied the following principle of contract law:

> When one party to a contract, by wrongful means, prevents the other party from performing, as by making it impossible to perform, such an action by the party at fault constitutes a breach of contract. The effect of such a breach is not only to excuse performance by the injured party, but also to entitle him to recover for any damage he may sustain by reason of the breach.

*Id*. at 889-90.

Citing *S.K.Y. Inv. Corp.*, the Ibarras contend they were entitled to their instruction on breach of contract and impossibility of performance. The Ibarras argue the trial court erred in not submitting their instruction on breach of contract and impossibility of performance because the evidence at trial "fit" "the framework" of *S.K.Y. Inv. Corp.* However, *S.K.Y. Inv. Corp.* is procedurally and factually distinguishable from the Ibarras' case.

The plaintiff in *S.K.Y. Inv. Corp.* was a corporation that was planning to construct a shopping center and lease retail space to tenants. Before construction of the shopping center began, the corporation entered into a lease agreement with H.E.B. *Id.* at 887. The lease

agreement gave H.E.B. the option to cancel and terminate the lease if construction on the shopping center did not begin by September 1, 1967. *Id.* When construction did not begin by September 1, 1967, H.E.B. exercised its option to cancel and terminate the lease. *Id.* Subsequently, the corporation sued H.E.B. for breach of contract. *Id.* at 887-88. H.E.B. moved for summary judgment on the basis that construction did not begin by September 1, 1967. *Id.* at 888-89. The corporation countered that its failure to begin construction was caused by H.E.B.'s failure to meet two of its contractual obligations, namely H.E.B.'s failure to provide interior design requirements to the architect, and H.E.B.'s failure to provide certain financial information. *Id.* at 889-90. In other words, the corporation maintained that its performance under the contract was prevented, or made impossible, by H.E.B.'s failure to perform. *See id.* The appellate court determined the contract did not require H.E.B. to provide the information in question, and therefore, summary judgment against the corporation was proper. *Id.* at 892.

Here, the Ibarras argue that "the inclusion of that illegitimate balance [in the agreement] made it impossible for Maribel to perform on the August 16, 2001, agreement." For this reason, the Ibarras assert that the City "breached the contract at the moment it was formed." We disagree with the Ibarras that the inclusion of the prior account balances in the agreement shows that the City prevented Maribel from performing on the contract, or that the City made it impossible for her to perform on the contract. First, the Ibarras' impossibility theory, which is grounded in their inability to make payments, involves subjective impossibility. Generally, subjective impossibility does not affect the parties' obligations under a contract. *See Johnson*, 2011 WL 3426223, at *3; *Janak*, 586 S.W.2d at 906-07. Second, under the contract, Maribel agreed to pay the full amount of $5,033.72 by making a payment of $100.00 on August 16, 2001, a payment of $200.00 on September 1, 2001, twenty-three monthly payments of $200.00, and one additional monthly

payment of $133.72. There was no evidence at trial showing the City engaged in any action that prevented Maribel from making these payments as promised, or that the City engaged in any action that made the contract impossible to perform. In fact, there was evidence indicating the Ibarras had some income from which they could have paid for water services. We conclude the trial court did not abuse its discretion in failing to include in the jury charge the Ibarras' instruction on breach of contract and impossibility of performance. Issue one is overruled.

## EXCLUSION OF EVIDENCE

In their second issue, the Ibarras argue the trial court erred in excluding witness testimony pertaining to their nuisance claim. The Ibarras filed suit on November 16, 2004. On June 16, 2010, five days before trial, the Ibarras filed their witness list identifying numerous physicians and counselors as witnesses to be called at trial. In response, the City moved to exclude the testimony of these witnesses on the basis they were not properly designated or disclosed as required by Rule 195 of the Texas Rules of Civil Procedure and the pretrial order.[2] The trial court granted the motion and excluded the witnesses.

We review the trial court's decision to exclude evidence for an abuse of discretion. *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). An abuse of discretion occurs when the trial court acts without regard for any guiding rules or principles. *Alvarado*, 897 S.W.2d at 754.

Pursuant to Rule 195.2 of the Texas Rules of Civil Procedure, the Ibarras were required to designate their experts ninety days before the end of the discovery period. TEX. R. CIV. P. 195.2(a). Pursuant to Rule 193.6(a) of the Texas Rules of Civil Procedure, a party who fails to make a discovery response in a timely manner may not offer the testimony of a witness who was not timely identified. *Id*. 193.6(a). However, the trial court may allow the party to offer the

---

[2]The pretrial order was not included in the clerk's record.

testimony if it finds there was good cause for the failure to timely make the discovery response, or the failure to make the response will not unfairly surprise or prejudice the other parties. *Id.*

Rule 702 of the Texas Rules of Evidence provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education" may testify "in the form of an opinion or otherwise" "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Rule 701 of the Texas Rules of Evidence provides that "[i]f a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." TEX. R. EVID. 701.

On appeal, the Ibarras argue the trial court abused its discretion in excluding the testimony of the witnesses in question because "the Ibarras' treating doctors and counselors were fully qualified to testify about [the Ibarras'] health problems…because they had first-hand, direct, personal knowledge of the maladies [the Ibarras] were suffering." The Ibarras maintain that the witnesses in question, who were treating physicians and counselors, were not offered as experts, but were offered to establish the damage to the Ibarras' health during the nine years they were without running water in their home. The City argues the witnesses in question were actually expert witnesses because the main substance of their testimony was based on an application of their special knowledge, skill, experience, training, or education.

"The line between who is a Rule 702 expert witness and who is a Rule 701 witness is not always bright." *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 851 (Tex. 2011). However, when the main substance of a witness's testimony is based on an application of the witness's specialized knowledge, skill, experience, training, or education, then

the testimony will generally be expert testimony within the scope of Rule 702. *Id*. A witness giving such testimony must be properly disclosed and designated as an expert. *Id*. "Any other principle would allow parties to conceal expert testimony by claiming the witness is one whose opinions are merely for the purpose of explaining the witness's perceptions and testimony." *Id*.

At the pretrial conference, the trial court inquired about the nature of the testimony of the witnesses in question. The Ibarras stated that one witness, Dr. Allen, would testify that he treated Maribel for stomach problems, and another witness, Dr. Antonini, would testify that he treated Maribel for skin eruptions. The Ibarras also stated that three of the witnesses were counselors who treated Maribel's children for emotional conditions. When the trial court asked if these witnesses or any other witnesses would connect these health and emotional conditions to the water issue, the Ibarras stated they would not. The Ibarras indicated they were offering the testimony of the witnesses in question merely as evidence that the Ibarras suffered from health and emotional conditions. The trial court then ruled that it was excluding the physicians' and counselors' testimony.[3]

We cannot say the trial court abused its discretion in excluding the testimony of the witnesses in question. As described by the Ibarras, the witnesses' testimony was based on their diagnoses and treatment of their patients. The trial court could have reasonably concluded that the main substance of the witnesses' testimony was based on an application of their specialized scientific, technical, or specialized knowledge, and therefore, was properly categorized as expert testimony. *See Speedy Stop Food Stores*, 337 S.W.3d at 850-52 (holding trial court did not abuse its discretion in excluding witness's opinion testimony under Rule 701 when the main substance

---

[3]The trial court also indicated it was excluding the counselors' testimony because Maribel's children were not parties to the lawsuit. On appeal, the Ibarras argue the trial court could not have properly excluded the counselors' testimony on this basis, citing *Vann v. Bowie Sewerage Co.,Inc.*, 90 S.W.2d 561, 563 (Tex. 1936). However, we do not read *Vann* as standing for the proposition that a nonparty may recover damages for nuisance.

of his testimony was based on specialized knowledge and the witness was not timely disclosed as an expert); *Lopez-Juarez v. Kelly*, 348 S.W.3d 10, 19 (Tex. App.—Texarkana 2011, pet. denied) (holding witness's testimony was not admissible as lay opinion testimony when it was not based solely on his perceptions of the accident scene). The Ibarras made neither a showing of good cause for not timely designating their witnesses as experts, nor a showing that their failure to timely designate their witnesses as experts would not unfairly surprise or prejudice the other parties. *See* TEX. R. CIV. P. 193.6(a). Issue two is overruled.

### DIRECTED VERDICT

In their third issue, the Ibarras argue the trial court erred in granting a directed verdict on their nuisance claim because there was evidence of probative force on each of the elements of their nuisance claim.

In reviewing a trial court's directed verdict, we examine the evidence in the light most favorable to the person suffering an adverse judgment and decide whether there is any evidence of probative value to raise an issue of material fact on the question presented. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011); *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994). We give the losing party the benefit of all inferences created by the evidence. *Szczepanik*, 883 S.W.2d at 649. If there is any conflicting evidence of probative value on any theory of recovery, a directed verdict is improper and the case must be reversed and remanded for a jury determination of that issue. *Id*.

A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003); *Aguilar v. Trujillo*, 162 S.W.3d 839, 850 (Tex. App.—El Paso 2005, pet. denied). A nuisance may arise by

causing (1) physical harm to property, such as by the encroachment of a damaging substance or by the property's destruction, (2) physical harm to a person on the property from an assault on his senses or by other personal injury, and (3) emotional harm to a person from the deprivation of the enjoyment of his property through fear, apprehension, or loss of peace of mind. *Aguilar*, 162 S.W.3d at 850. For an actionable nuisance, a defendant must generally engage in one of three kinds of activity: (1) intentional invasion of another's interests; (2) negligent invasion of another's interests; or (3) other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interests. *Id.*; *Hicks v. Humble Oil and Ref. Co.*, 970 S.W.2d 90, 96 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

On appeal, the Ibarras argue the trial court erred in granting directed verdict because the evidence showed the City interfered with their interest by engaging in intentional and unreasonable conduct. To support this argument, the Ibarras cite the City's disconnection notice which was admitted into evidence. The notice, which is dated September 12, 2002, indicated the City was turning off the Ibarras' water because the Ibarras were delinquent in making payments. However, the notice fails to show the City's conduct in disconnecting water services was negligent, intentional and unreasonable, or abnormal. The City maintains there is no evidence that its action in disconnecting water services for nonpayment was negligent, intentional and unreasonable, or abnormal conduct, citing section 13.250(d)(1) of the Texas Water Code which expressly allows for the discontinuation of water services in the event of nonpayment.

After considering all of the evidence in the light most favorable to the Ibarras, we conclude there was no evidence of probative force to raise a fact issue as to whether the City's action in disconnecting water services for nonpayment was negligent, intentional and unreasonable, or abnormal conduct. The undisputed evidence shows Maribel failed to make

payments pursuant to her written agreement with the City. The undisputed evidence further shows the written agreement between Maribel and the City warned that failure to make payments in accordance with the agreement would result in disconnection of water services. Additionally, the City's action in discontinuing water services for nonpayment was expressly authorized by statute. *See* TEX. WATER CODE ANN. § 13.250(d)(1) (West 2008). We conclude the trial court did not err in granting the motion for directed verdict as to the Ibarras' nuisance claim. Issue three is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Karen Angelini, Justice